[Civ. No. 35821. First Dist., Div. Two. Dec. 19, 1975.]

In re the Marriage of LUCINDA R. and MANUEL L. VALLE.
LUCINDA R. VALLE, Respondent, v.
MANUEL L. VALLE, Appellant.

## COUNSEL

Morgan, Beauzay, Hammer, Ezgar, Bledsoe & Rucka and Eleanor M. Kraft for Appellant.

Cominos, Shostak & Epstein, Lawrence Shostak and Stephen Fredkin for Respondent.

## OPINION

KANE, J.—Manuel L. Valle ("Manuel") appeals from a judgment dissolving the marriage of the parties, providing for spousal and child support, and dividing the community property.

The parties married in Salinas, California, on November 18, 1964, and separated on November 2, 1972. The spouses had no children of their own. However, in November or December of 1966 they brought two children to the United States from Mexico. The children, Raymond, born September 13, 1961, and Rebecca, born September 9, 1965, were the natural children of Manuel's brother and sister-in-law. Nonetheless, the birth certificates by which the children entered the United States showed the parties as the natural parents. The record is undisputed that from the very outset the children regarded the parties as their natural parents, and the parties likewise considered and treated the children as their own. The children are now of school age, are doing well in their studies, and are completely Americanized.

The community assets of the parties consisted of a family residence at 250 Cross Avenue, Salinas, California, furniture and furnishings therein, a piece of real property in Guadalajara, Mexico, and a 1967 Pontiac automobile. The evidence introduced at the trial also indicated various community debts such as hospital, medical and furniture bills.

In a proceeding instituted by respondent ("Lucinda") for dissolution of marriage, child custody and support, and division of community property, the trial court found inter alia that under the circumstances of the case Manuel was estopped to deny that he was the father of the minor children. The court granted custody of the children to Lucinda, and ordered Manuel to pay child support in the amount of $85 per month for each child. In adjudicating the parties' rights in the community property, the trial court found that the real property in Mexico and the

Pontiac automobile constituted community assets. Accordingly, the California residence together with the furniture were awarded to Lucinda, while the property in Mexico and the automobile were given to Manuel. At the same time Lucinda was obligated to pay the outstanding hospital and medical expenses and the debt owed on the furniture ("McMahan bill").

Manuel's primary contention on appeal is that the trial court erred in finding that he was estopped from denying the paternity of the minor children. In the absence of a valid estoppel, argues Manuel, the trial court had no statutory authority to order child support (Civ. Code,[1] § 4700, subd. (a)[2]) or to award the custody of the children (§ 4351) because pursuant to the stipulated facts the parties were not the natural parents of the children and no adoption had occurred. In addition, Manuel maintains that the trial court failed to divide the community property equally as required by section 4800.[3] We are unable to accept any of these arguments, and affirm the judgment.

*Estoppel:* As appears from the foregoing discussion, the central issue on appeal is whether the ruling of the trial court that Manuel was estopped from denying paternity is properly sustainable by the facts and the applicable legal principles. We believe that, for the reasons which follow, the answer to this question must be in the affirmative.

Generally speaking, the doctrine of equitable estoppel is a rule of fundamental fairness whereby a party is precluded from benefiting from his inconsistent conduct which has induced reliance to the detriment of another (*Hochfelder* v. *Ernst & Ernst* (7th Cir. 1974) 503 F.2d 1100, 1118; *In re Lisa R.* (1975) 13 Cal.3d 636, 645 [119 Cal.Rptr. 475, 532 P.2d 123]; Evid. Code, § 623[4]). ■ Under well settled California law four

[1] Unless otherwise indicated, all references will be made to the California Civil Code.

[2] Section 4700, subdivision (a), provides in part that "In any proceeding where there is at issue the support of a minor child, the court may order either or both *parents* to pay any amount necessary for the support, maintenance, and education of the child." (Italics added.)

[3] Section 4800, subdivision (a), reads in part that "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, *the court shall,* either in its interlocutory judgment of dissolution of the marriage . . . or at a later time if it expressly reserves jurisdiction to make such a property division, *divide the community property* and the quasi-community property of the parties . . . *equally.*" (Italics added.)

[4] Evidence Code, section 623, provides that "Whenever a party has, by his own statement of conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; *Simank Realty, Inc.* v. *DeMarco* (1970) 6 Cal.App.3d 610, 616 [86 Cal.Rptr. 212]; *Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal.App.2d 489, 491 [256 P.2d 32]). While pronounced and applied primarily within the context of commercial transactions, the elements of estoppel have equal application to establish the relationship between a child and his putative father. Contrary to Manuel's assertion, however, in this type of case the estoppel runs in favor of the child, not the spouse (*Clevenger* v. *Clevenger* (1961) 189 Cal.App.2d 658, 673 [11 Cal.Rptr. 707, 90 A.L.R.2d 569]).

The governing authority in the case at bench is *Clevenger.* In that case the wife asserted a claim against her husband for the support of her illegitimate child, on the basis that the husband recognized and supported the child as his own from the time of birth and, therefore, was estopped from avoiding liability for the continuing support of the child. While holding that the record in *Clevenger* did not establish an estoppel, the court pointed out that *"if the facts would establish* an express agreement for the maintenance of the child or *an estoppel as to the child . . . the husband would be liable for the child's support."* (*Clevenger* v. *Clevenger, supra,* pp. 664-665, italics added; see also: *Steed* v. *Imperial Airlines* (1974) 12 Cal.3d 115, 122 [115 Cal.Rptr. 329, 524 P.2d 801].)

The court in *Clevenger* spelled out in detail under what circumstances a child might look to a putative father for support. ■ Thus, in order to establish an estoppel vis-a-vis the putative father, there must be a showing that (1) the putative father represented to the child that he was his father; (2) the child relied upon the representation by accepting and treating the putative father as his father; (3) the child was ignorant of the true facts; and (4) the representation was of such duration that it frustrated the realistic opportunity to discover the natural father and to reestablish the child-parent relationship between the child and the natural father (pp. 671, 674-675).

■ We entertain no doubt that the record at hand abundantly sustains all the elements of estoppel. It reveals that by way of official documents the parties represented to the United States authorities that

the minor children were their natural offspring. This representation continued during the upbringing of the children as well. At the trial, both parties conceded that they regarded and treated the children all along as their own and loved them as such. The children returned their love, and fully accepted the parties as their own parents, calling Manuel "Daddy" or "Papa." The record likewise discloses that the children were ignorant of the true situation. In point of fact, they were so young when removed from the family home in Mexico that they did not even know or remember their natural parents. Furthermore, the relationship in question is of several years' duration—one which has spawned a true paternal relationship between the children and Manuel. Under these circumstances it cannot be said that there has remained a realistic opportunity to reestablish the child-parent relationship between the children and their natural parents.

But in addition there is a further reason why the doctrine of equitable estoppel should be applied in this case. The record is clear that Manuel purported to invoke the doctrine only to defeat Lucinda's claim to the children, but showed continued willingness to provide support for the children even in the absence of paternity *if the court would award custody to him.* As pointed out earlier, the very essence of equitable estoppel is to prevent a party from blowing hot and cold and from taking advantage of his inconsistent conduct to the detriment of another.

Our conclusion that Manuel as a putative father was properly estopped from denying paternity in the instant case is also dispositive of the additional contentions raised by Manuel, i.e., that by reason of the lack of actual parental relationship the trial court had no jurisdiction to adjudicate the issue of custody and support. Indeed, the very thrust of *Clevenger* is that when the theory of estoppel obtains the child may seek *support* from his putative father. Similarly, we perceive no good reason why the trial court should not have jurisdiction to award child *custody* when the parenthood is established by estoppel and when the issue is fairly and properly litigated with both parties present (cf. *Swain* v. *Swain* (1967) 250 Cal.App.2d 1, 10 [58 Cal.Rptr. 83]).[5]

---

[5]Of incidental interest we note that the custody of a minor child may be awarded to a person or persons other than the parents. Section 4600 provides in part that "Custody should be awarded in the following order of preference:

"(a) To either parent according to the best interests of the child.

"(b) To the person or persons in whose home the child has been living in a wholesome and stable environment.

"(c) To any other person or persons deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child."

Appellant's contention at oral argument that section 4600, subdivision (c), applies only where the court makes an express finding that an award of custody to a parent would be

Section 4351 provides that in proceedings under the Family Law Act the superior court has jurisdiction to make orders concerning the custody and support of minor children of the marriage. In *Adoption of Bonner* (1968) 260 Cal.App.2d 17 [66 Cal.Rptr. 812], it was held that the description "children of the marriage" does not limit the court's jurisdiction to the natural issue of the parties. In that case Mr. and Mrs. Bonner had, during their marriage, commenced proceedings to adopt a baby girl (Laura). Before the adoption proceedings became final, the Bonners were divorced. Custody of Laura was awarded to Mrs. Bonner. Thereafter, Mr. Bonner filed a petition to adopt Laura. This petition was denied, upon a finding that as between the Bonners the divorce proceeding had established that they were the parents of Laura. Consequently, the adoption of Laura could be accomplished only upon the consent of Mrs. Bonner.

On appeal, Mr. Bonner contended that since Laura was, in fact, not a child of the marriage, the court in the divorce action had no jurisdiction over the minor child thereby rendering its order concerning custody void. In rejecting the argument the court reaffirmed the already established proposition that in a divorce action the court has jurisdiction to determine "as between the parties" the parentage of children and to provide for their custody and support.

The court then held that Mr. Bonner was estopped from contesting the issue of parentage in the adoption proceeding. We, of course, recognize a factual distinction between *Bonner* and the case at bench, in that the issue of parentage was not contested by Mr. Bonner in the divorce action whereas here the true facts were brought to the attention of the trial court. This is, however, a distinction without legal significance in the context of jurisdiction. In the *Bonner* case the estoppel—which was collateral—arose by reason of Mr. Bonner's failure to exercise his right to litigate the issue of parentage. Such a conclusion of necessity implies that the court had jurisdiction to decide the matter. ■ It follows a fortiori that where, as here, the issue of parentage is actually raised and sufficient evidence establishing it by *direct estoppel* is presented, the court has jurisdiction to decide it.

■ *Division of Community Property:* Manuel's second major claim that the trial court prejudiced his rights by failing to divide the community property equally is similarly lacking in any merit.

detrimental to the child and the award to a nonparent is required to serve the best interests of the child is, of course, valid in the situation where the custody dispute is between parent and nonparent (*In re B.G.* (1974) 11 Cal.3d 679, 698-699 [114 Cal.Rptr. 444, 523 P.2d 244]). In the case at bench, however, no such dispute was before the court.

The evidence reveals that while Lucinda was awarded a total amount of $5,500 ($4,500 equity in the California home and furniture valued at $1,000), she was ordered to pay the medical and hospital expenses totaling $2,665,[6] which means that she received a net sum of $2,835 as her share in the community property. In addition, Lucinda concedes that she should pay the McMahan bill, which further reduces her share by $700, leaving a net of $2,135. By contrast, the trial court awarded Manuel the Pontiac automobile, having a cash value of $500, and the Mexican property, having an investment value of $3,000. Since Manuel's share totals $3,500, well in excess of the value granted to Lucinda, he may not well complain that the division of the community property prejudicially affected his rights.

Manuel's insistence that neither the Mexican property nor the automobile should have been counted in the division of the community property, because he had lost both of them during his short illness in 1973, may be briefly disposed of. The uncontroverted evidence discloses that these items were community property and were in Manuel's possession on November 2, 1972, the time of separation. Under these circumstances it was incumbent upon Manuel to persuade the trial court that the assets in dispute had been lost by reason of discharging community debts (*In re Marriage of Warren* (1972) 28 Cal.App.3d 777, 784 [104 Cal.Rptr. 860]). The record, however, is consistent with the conclusion, implicit in the court's ruling, that Manuel fell short of sustaining the burden of proof. Although he testified at the trial that the Pontiac automobile had been given to his brother in return for a loan granted to him by the brother during his illness in the fall of 1973, and that the real property had been lost due to default in making the monthly payments thereon, he failed to substantiate these allegations in any manner. Thus, he did not produce documentary or other evidence as to the transfer of title of the automobile to his brother, and likewise failed to show the circumstances attending the foreclosure sale (e.g., notices of default, time and place of the foreclosure sale, the deed of grant, the name of the new owner, the sale price of the property, the amount of equity remaining after payment of the debts, etc.). In this situation, the trial court was fully justified in disregarding Manuel's uncorroborated testimony and in including the assets in question in the community property.

---

[6]The above stated amount comprises the following items: county hospital bill, $915; community hospital bill, $1,150; medical bill owed to Dr. Wong, $600.

Pursuant to the stipulation by Lucinda, the findings of fact, conclusions of law, and the judgment are amended so as to provide that the McMahan bill, totaling $700, be paid by Lucinda. As so modified the judgment is affirmed. Costs to respondent.

Taylor, P. J., and Rouse, J., concurred.