[No. B171304. Second Dist., Div. Seven. May 9, 2005.]

CHARLOTTE CORDOVA, Plaintiff and Appellant, v.
21ST CENTURY INSURANCE COMPANY, Defendant and Respondent.

92

**COUNSEL**

Kabateck & Garris, Kabateck Brown Kellner, Brian S. Kabateck, Richard L. Kellner, James W. Haines and Alfredo Torrijos for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Lisa R. Jaskol; Lewis, Brisbois, Bisgaard & Smith, John M. Raders and Amy T. Fleishman for Defendant and Respondent.

OPINION

**JOHNSON, J.**—Under Code of Civil Procedure section 340.9[1] certain victims of the Northridge earthquake whose insurance claims would otherwise have been barred by the limitations period in Insurance Code section 2071 received an additional one-year period from January 1, 2001 to December 31, 2001 in which to file a claim or commence an action on the policy. The issue before us is whether, with the expiration of this additional one-year period, the filing window is now permanently closed to all victims of the Northridge quake or whether insurers may be equitably estopped from asserting the bar of the limitations period.

We hold the Legislature did not supplant application of the long-established doctrine of equitable estoppel when it enacted section 340.9.

## FACTS AND PROCEEDINGS BELOW

The following facts are undisputed.

At the time of the Northridge earthquake, January 1994, Charlotte Cordova had a homeowners policy with 21st Century Insurance Company that included earthquake coverage. Shortly after the quake Cordova submitted a claim of loss based on damage to block walls, cracks throughout her house and damage to personal property. In March 1994, 21st Century determined Cordova's dwelling and personal property losses were less than the applicable deductibles but sent her a check for $5,255.48 under her "other structures" coverage. In June 1994 Cordova asked the company to reevaluate her claim. In August 1994, following a reinspection of the property, 21st Century paid Cordova an additional $1,950. In November 1994 Cordova wrote to 21st Century stating she understood she could have her home inspected by a structural engineer at the insurance company's expense. Later the same month 21st Century responded to Cordova's letter advising her if the contractor making the repairs on her property suggested an inspection by a structural engineer the company would employ such a person to conduct the inspection.

There were no further communications between Cordova and 21st Century regarding her earthquake claim until nearly eight years later when, in August 2002, an attorney representing Cordova wrote to the company and requested an adjuster contact him regarding her claim. A representative of 21st Century wrote back pointing out the period for filing a claim or initiating litigation arising out of the Northridge quake had long since expired. Cordova's attorney responded he was requesting her claim be reopened under authority of the California Supreme Court's 2001 decision in *Vu v. Prudential Property*

---

[1] All future statutory references are to the Code of Civil Procedure unless otherwise stated.

& *Casualty Ins. Co.*[2] The record does not reflect any further communications between Cordova or her counsel and 21st Century.

Cordova filed suit against 21st Century in September 2002. She alleged 21st Century unreasonably and unjustifiably failed to conduct a thorough investigation of her earthquake loss; she was misinformed as to the extent of the damage to her property; and the special statutory one-year period for filing suit against 21st Century for losses sustained in the Northridge earthquake had expired before she realized the true extent of her damage.

21st Century moved for summary judgment on the ground "there is no merit to [this action] since plaintiff did not timely pursue [her] claims and is barred by the provisions of Code of Civil Procedure section 340.9, subdivision (b)." In support of its motion 21st Century submitted a separate statement of undisputed facts setting forth the facts discussed above. The points and authorities accompanying the motion argued Cordova did not file this action until nine months after the expiration of the limitations period in section 340.9 and therefore "the instant complaint is barred by the limitations provisions of [section] 340.9, subdivision (b) and judgment should be entered in 21st Century's favor." Anticipating Cordova would attempt to make an equitable estoppel argument under *Vu*, 21st Century also argued section 340.9 cut off any such equitable relief.

In response, Cordova admitted she filed this lawsuit after the one-year period in section 340.9 had expired. She argued, however, the doctrine of equitable estoppel barred 21st Century from raising a statute of limitations defense based on section 340.9 and nothing in that statute extinguished her equitable remedy.

The trial court granted 21st Century's motion for summary judgment on two grounds. The court concluded section 340.9 was the exclusive means for pursuing a previously time-barred claim against an insurer arising from the Northridge earthquake and therefore Cordova could not rely on the doctrine of equitable estoppel to avoid the one-year limitations period in Insurance Code section 2071. The court further held even if theoretically the doctrine of equitable estoppel could apply to Northridge claims Cordova failed to submit any evidence showing the doctrine applied in her case.

The court granted judgment to 21st Century and Cordova filed a timely appeal.

---

[2] *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142 [113 Cal.Rptr.2d 70, 33 P.3d 487]. In *Vu* the court held an insurer may be estopped to raise a statute of limitations defense to a lawsuit if the insured can show the suit was not timely filed because the insured reasonably relied on the insurer's factual misrepresentation the damages were less than the policy deductible. (*Id.* at p. 1146.)

## DISCUSSION

I. *SECTION 340.9 DOES NOT PRECLUDE VICTIMS OF THE NORTHRIDGE EARTHQUAKE FROM OBTAINING EQUITABLE RELIEF FROM THE STATUTORY LIMITATION PERIOD OF INSURANCE CODE SECTION 2071.*

### A. *The Statutory Language.*

#### 1. *Insurance Code section 2071.*

■ Insurance Code section 2071 states in relevant part: "No suit or action on [a] policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within 12 months next after inception of the loss."

■ In *Vu v. Prudential Property & Casualty Ins. Co.* our Supreme Court held if an insured fails to bring a lawsuit against the insurer within the statutory one-year period because he reasonably relied on the insurer's incorrect factual representations regarding the loss the insurer would be equitably estopped from raising the statute of limitations as a defense.[3]

#### 2. *Section 340.9.*

While *Vu* was pending in the Supreme Court the Legislature enacted section 340.9.[4]

Section 340.9, subdivision (a) states: "(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section [i.e., January 1, 2001] solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section [i.e., by January 1, 2002]. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage."

Subdivision (c) of section 340.9 provides: "Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section."

---

[3] *Vu v. Prudential Property & Casualty Ins. Co.*, *supra*, 26 Cal.4th at pages 1152, 1154.

[4] The court noted the passage of section 340.9 but after receiving supplemental briefing concluded the statute's effect, if any, on the availability of equitable estoppel was not within the scope of the question presented in *Vu* and therefore did not address that issue. (*Vu v. Prudential Property & Casualty Ins. Co.*, *supra*, 26 Cal.4th at p. 1146, fn. 1.)

■ In determining the meaning of section 340.9 we begin with its language because if the language is clear there is no need to look further.[5]

Both parties find language in the statute which supports their positions.

■ Arguing section 340.9 does not supplant the doctrine of equitable estoppel Cordova points out there is nothing in the statute which specifically and expressly states the legal remedy it affords supersedes any equitable remedy. The absence of such a statement is significant, she argues, because the Legislature has shown if it wants to bar plaintiffs from asserting equitable relief from statutes of limitation it knows how to say so. For example, section 366.2, subdivision (a) provides a one-year limitation period for suing on causes of action which exist against a decedent at the time of death. Subdivision (b) of the statute states: "The limitations period provided in this section for commencement of an action *shall not be tolled or extended for any reason* except as provided [in the statute]." (Italics added.) In *Battuello v. Battuello* the court held that although the plain language of subdivision (b) precluded a plaintiff from relying on the doctrine of equitable tolling it did not prevent the court from applying the principles of equitable estoppel.[6]

■ The doctrines of equitable tolling and equitable estoppel are distinct, *Battuello* explained, each arising under different circumstances, and having different rationales and different predicates.[7] Equitable estoppel does not "extend" the statute of limitations " 'but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.' "[8] Unlike the doctrine of equitable tolling, which takes its life from the statute of limitations itself, the doctrine of equitable estoppel " 'takes its life . . . from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice.' "[9] Thus, the court found, while the language of the statute clearly showed the Legislature intended the one-year limitation period "not be 'tolled' or 'extended,' " the statute said nothing about equitable estoppel. "In the absence of such language, or legislative history suggesting that was what the Legislature intended . . . we conclude the doctrine still applies."[10]

---

[5] *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].

[6] *Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 848 [75 Cal.Rptr.2d 548]. (At the time *Battuello* was decided the provisions discussed were found in section 366.2, subdivision (a)(1) and (2) respectively.)

[7] *Battuello v. Battuello, supra,* 64 Cal.App.4th at page 847.

[8] *Battuello v. Battuello, supra,* 64 Cal.App.4th at page 847.

[9] *Battuello v. Battuello, supra,* 64 Cal.App.4th at pages 847–848.

[10] *Battuello v. Battuello, supra,* 64 Cal.App.4th at page 848.

*Battuello* was quoted with approval by our Supreme Court in *Lantzy v. Centex.*[11]

In *Lantzy* the court considered the interplay between statutes of limitation applicable to suits for latent construction defects. Prior to 1971 suits to recover for construction defects were generally subject to limitation periods of three or four years depending on the theory of recovery.[12] These periods were extended, often significantly, by court decisions holding the statutes of limitations did not begin to run until the defects were or should have been discovered and the plaintiff's time to sue was tolled while promises or attempts to repair were pending.[13] In response to contractors' assertions this " 'perpetual and never ending risk' " was imperiling the state's construction industry the Legislature enacted section 337.15.[14] Section 337.15 " 'imposed an absolute requirement that a suit . . . to recover damages for a [latent] construction defect be brought within 10 years of the date of substantial completion of construction, regardless of the date of discovery of the defect.' "[15]

The issue in *Lantzy* was whether the "absolute" 10-year limitations period of section 337.15 was subject to the doctrines of equitable tolling and equitable estoppel in an action filed 10 years and nine months after substantial completion of the plaintiffs' homes. The court acknowledged section 337.15 did not specifically mention equitable tolling or equitable estoppel. Nevertheless the court found applying the doctrine of equitable tolling to the statutory limitations period would "contravene the legislative purpose" of providing repose to potential defendants after "the already lengthy period during which [they were] exposed to suit."[16] The court further held, however, this same legislative purpose would not be contravened by allowing the plaintiffs to plead the doctrine of equitable estoppel in response to defendant's statute of limitations defense.[17]

Other than noting equitable tolling and equitable estoppel "are distinct doctrines"[18] *Lantzy* did not explain why the latter should not suffer the same fate as the former under section 337.15. The explanation may lie in the court's statement that to invoke the doctrine of equitable estoppel is to

[11] *Lantzy v. Centex* (2003) 31 Cal.4th 363, 383–384 [2 Cal.Rptr.3d 655, 73 P.3d 517].

[12] *Lantzy v. Centex, supra,* 31 Cal.4th at page 369.

[13] *Lantzy v. Centex, supra,* 31 Cal.4th at pages 374–375.

[14] *Lantzy v. Centex, supra,* 31 Cal.4th at page 374.

[15] *Lantzy v. Centex, supra,* 31 Cal.4th at page 369.

[16] *Lantzy v. Centex, supra,* 31 Cal.4th at pages 380, 382.

[17] *Lantzy v. Centex, supra,* 31 Cal.4th at pages 383–384.

[18] *Lantzy v. Centex, supra,* 31 Cal.4th at page 383.

"invoke the venerable principle that ' "[o]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." ' [Citation.]"[19] In other words the court may have based its distinction on a preference for a system of law based on justice and morality over one based on the commercial interests of any particular class.

■ Cordova's interpretation of the statute as not barring claims of equitable estoppel is also supported by the Legislature's language in subdivision (c) of section 340.9 which provides the statute shall not be "construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section." This language can certainly be construed as a recognition on the part of the Legislature actions can be filed after January 1, 2002 if the defendant is equitably estopped from asserting a limitations defense. Under this reading of the statute the claim, and the action based on the claim, is only time-barred if there is a valid defense under the one-year-from-inception-of-loss limitations period. If such a defense cannot properly be asserted because of the doctrine of equitable estoppel then the action is not time-barred and section 340.9, subdivision (a) does not apply. It is difficult to imagine any homeowner who suffered a loss in the January 1994 quake who could not have reasonably concluded her property had suffered a loss more than one year prior to the effective date of section 340.9. Accordingly it is difficult to imagine a purpose for subdivision (c) other than to say, in effect, if you could have sued your insurer without the benefit of this statute nothing in this statute limits your right to do so.

21st Century counters Cordova's argument that if the Legislature had intended section 340.9 to bar claims of equitable estoppel it would have said so with the argument if the Legislature had *not* intended section 340.9 to bar claims of equitable estoppel it would have said so. 21st Century notes for example another statute prescribing a limitations period, former section 340.1, subdivision (*l*), stated nothing in the statute "shall be construed to preclude the courts from applying equitable exceptions to the running of the applicable statutes of limitations, including exceptions relating to delayed discovery of injuries, with respect to actions commenced prior to January 1,

---

[19] *Lantzy v. Centex, supra,* 31 Cal.4th at page 383. One commentator traces this "venerable principle" as far back as the 13th century writings of theologian Saint Thomas Aquinas. (Chaplin, *Reviving Contract Claims Barred by the Statute of Limitations: An Examination of the Legal and Ethical Foundation for Revival* (2000) 75 Notre Dame L. Rev. 1571, 1593, p. 1928.)

1991."[20] The absence of such a savings clause, 21st Century argues, demonstrates section 340.9 was intended to be the policyholders' exclusive remedy for time-barred claims.

In addition 21st Century points out neither *Lantzy* nor *Battuello* held a statute must expressly exclude equitable remedies for them not to apply. On the contrary both cases recognized an intent to preclude equitable remedies can be found in the statute's legislative history.[21] In this case, 21st Century maintains, the legislative history supports its interpretation of the statute.[22]

Finally, 21st Century argues the Legislature's intent to preclude further reliance on equitable estoppel after the enactment of section 340.9 can be inferred from the statute's "broad and detailed scheme" encompassing all the claims which could otherwise properly have been asserted under equitable estoppel.[23] 21st Century relies on another venerable principle: equitable remedies do not apply when an adequate remedy exists at law.[24]

The broad and detailed scheme rationale was applied to bar a defendant's assertion of equitable estoppel in *Las Tunas Beach Geologic Hazard Abatement Dist. v. Superior Court* (hereafter *Las Tunas*). The City of Malibu adopted a resolution forming a Geologic Hazard Abatement District (GHAD). The resolution contained various conditions including one which permitted the city to dissolve the GHAD if it found the GHAD's abatement plan was not feasible or would not serve the purposes of state law. But when the city attempted to dissolve the GHAD on the basis of the conditions it had agreed to, the GHAD objected and sought declaratory and injunctive relief to prevent its dissolution. The GHAD argued it could be dissolved only in accordance with the comprehensive procedures set forth in Government Code section 56000 et seq. The trial court denied relief on the ground the GHAD had convinced the city council at the time of its formation it would abide by the dissolution conditions in the formation resolution and therefore it was equitably estopped from asserting those conditions were invalid.[25] The Court of Appeal reversed. It found: "Dissolution of GHAD's is governed by the extensive process set forth in [Government Code section 56000 et seq.]. In

---

[20] See *Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405, 1419 [21 Cal.Rptr.3d 208]. The quoted language was deleted from section 340.1 in the 1994 amendments to the statute. (Stats. 1994, ch. 288, § 1 p. 1928.)

[21] *Lantzy v. Centex, supra,* 31 Cal.4th at page 380; *Battuello v. Battuello, supra,* 64 Cal.App.4th at page 848.

[22] See discussion at pages 103–106, *post.*

[23] See *Pacific Scene, Inc. v. Penasquitos, Inc.* (1988) 46 Cal.3d 407, 414 [250 Cal.Rptr. 651, 758 P.2d 1182]; *Las Tunas Beach Geologic Hazard Abatement Dist. v. Superior Court* (1995) 38 Cal.App.4th 1002, 1013–1014 [45 Cal.Rptr.2d 529].

[24] See, for example, *Pacific Scene, Inc. v. Penasquitos, Inc., supra,* 46 Cal.3d at page 414.

[25] *Las Tunas, supra,* 38 Cal.App.4th at pages 1005–1007, 1013.

view of the detailed statutory scheme pertaining to the formation and dissolution of a GHAD, we reiterate, the Legislature has occupied the field so as to bar any nonstatutory change of organization." Therefore, the court held, "the comprehensiveness of the statutory scheme bars the City from invoking the equitable doctrine of estoppel to achieve dissolution of the [GHAD]."[26]

Cordova and 21st Century each make cogent arguments as to the meaning of section 340.9. We conclude, however, the statutory language and the case authority favor Cordova's interpretation for the reasons discussed above. 21st Century's argument that equitable remedies do not apply when an adequate remedy exists at law, although correct as a general principle, begs the question whether a limited revival statute such as section 340.9 is so comprehensive as to preclude resort to the equitable remedy of estoppel.[27]

█ To the extent there is any ambiguity in section 340.9, moreover, reference to the legislative history confirms our interpretation it was not intended to bar an insured from meeting a limitations defense with the well recognized doctrine of equitable estoppel.

### B. *The Legislative History.*

It is undisputed the January 1994 Northridge earthquake resulted in billions of dollars in property damage, thereby exposing insurance companies to significant liability.

Many of the claims for earthquake damage were settled to the policyholders' satisfaction but many were not. Claims which were not satisfactorily settled generally fell into two categories. In some cases the insurance companies' adjusters misrepresented to the insureds their damage did not exceed their policy deductible. In other cases the insurance companies' adjusters found the damage exceeded the policy deductibles but misrepresented the true extent of the damage caused by the quake.

Policyholders whose claims were denied or under-adjusted often did not learn the true extent of their damage until more than a year after the earthquake. When they attempted to have their insurance company reopen their claims or sued for breach of their insurance contracts the insurers threw up the bar of the one-year limitations period in Insurance Code section 2071. The policyholders responded with various arguments as to why their claims were not barred by the statute of limitations, including the argument the insurers were equitably estopped from asserting the limitations period because it was their own factual representations which had led the policyholders not to further pursue their claims within the one-year period.

---

[26] *Las Tunas, supra,* 38 Cal.App.4th at page 1014.
[27] See *Las Tunas, supra,* 38 Cal.App.4th at pages 1013–1014.

The policyholders' equitable estoppel arguments met with mixed results.

The argument succeeded in *Ward v. Allstate Ins. Co.*[28] There the Wards made an initial claim for earthquake damage within the statutory one-year period. Allstate's adjuster inspected the damage and determined the loss to be $20,000. After applying the policy deductible Allstate paid the Wards approximately $12,000 on their claim. In late 1995 the Wards learned their home had suffered greater damage than Allstate's adjuster had led them to believe. They estimated this damage, including damage to the foundation, to be in the sum of approximately $185,000. The Wards reported this newly discovered damage to Allstate, which responded " 'there is no coverage for your . . . earthquake claim.' "[29] The Wards then brought an action against Allstate for breach of contract and various torts. Allstate moved for summary judgment on the ground the action was barred by the one-year limitations provision. The court rejected this contention in part because, depending on facts yet to be developed, "the doctrine of equitable estoppel would still allow this case to proceed."[30] "Allstate," the court concluded, "cannot be allowed to lull the [p]laintiffs into sleeping on their rights, and then use the limitations period as a sword to cut down their claims."[31]

The policyholder's equitable estoppel claim was rejected by the federal district court in the first *Vu* decision (hereafter *Vu I*).[32] The facts in *Vu* were similar to those in *Ward*. Prudential's adjuster told Vu the damage to his home from the earthquake was only $3,962.50, an amount significantly below Vu's $30,000 deductible. Vu took no further action on his claim until August 1995, when he discovered substantial additional earthquake damage to his property of approximately $350,000.[33] Vu promptly informed Prudential of this newly discovered damage and requested coverage. Prudential denied Vu's request on the ground the one-year limitation period had expired. Vu filed suit against Prudential in federal district court. He alleged Prudential was estopped from invoking the one-year limitations period because his failure to bring an action within one year was the direct result of his reasonable reliance on Prudential's January 1994 inspection and its representation the damage to his property fell below his $30,000 policy deductible. The district court rejected Vu's argument and granted Prudential's motion for summary judgment.[34]

---

[28] *Ward v. Allstate Ins. Co.* (C.D.Cal. 1997) 964 F.Supp. 307.

[29] *Ward v. Allstate Ins. Co., supra,* 964 F.Supp. at page 309.

[30] *Ward v. Allstate Ins. Co., supra,* 964 F.Supp. at page 312.

[31] *Ward v. Allstate Ins. Co., supra,* 964 F.Supp. at page 312.

[32] *Vu v. Prudential Property & Casualty Ins. Co.* (C.D.Cal. 1996) No. CV-96-05247-KMW.

[33] The district court did not publish an opinion in *Vu I.* These facts are taken from the Ninth Circuit's opinion in *Vu v. Prudential Property & Casualty Ins. Co.* (9th Cir. 1999) 172 F.3d 725, 727. (Hereafter *Vu II.*)

[34] See *Vu II, supra,* 172 F.3d at page 728.

Upon Vu's appeal, the Ninth Circuit certified to the California Supreme Court[35] the question whether Insurance Code section 2071 bars a claim brought by the insured more than one year after the damage was sustained but within one year of discovery of additional damage when the insured initially presented a timely claim to the insurer and the insurer's agent inspects the property but does not discover the full extent of the covered damage.[36]

In 2000, while *Vu* was pending in the courts, the California Legislature took steps " 'to bring needed relief to the victims of the Northridge earthquake' " by enacting section 340.9.[37]

The legislative record shows section 340.9 was enacted in response to "reports of rampant mishandling of insurance claims by insurers."[38] The author of the legislation claimed following the devastation caused by the Northridge quake many victims were devastated a second time when their insurance companies denied or low-balled their claims for compensation. And " 'when homeowners complained to the Department of Insurance to obtain relief, the department afforded no help.' "[39] The Legislature received reports insurers " 'engaged in a systematic program of misleading consumers about the nature and extent of damage to their homes' " and, when the deceived homeowners learned the true extent of their damage, " 'the insurers simply refused to pay claims on the basis that the claims had become time-barred.' "[40] The legislation's author was quoted as stating " 'the one-year statute of limitations that is current law under Insurance Code section 2071

---

[35] See California Rules of Court, rule 29.8; Goar, *California's Certified Question Procedure: From Birth to First Steps* (2004) 17 California Litigation 4, 4–5.

[36] *Vu II, supra,* 172 F.3d at page 727. As previously noted (*ante,* at p. 95) our Supreme Court held equitable estoppel prevents an insurer from raising the statute of limitations as a defense if the insured failed to bring a lawsuit against the insurer within the statutory one-year period because he reasonably relied on the insurer's incorrect factual representations regarding the amount of the loss. (*Vu v. Prudential Property & Casualty Ins. Co., supra,* 26 Cal.4th at pp. 1152, 1154.) (Hereafter *Vu III.*) Following the Supreme Court's decision the Ninth Circuit remanded *Vu* to the district court to permit Vu to amend his complaint and develop the record to support his claim of equitable estoppel. "On remand," the court instructed, "the parties may raise, and the district court may consider, the effect of . . . section 340.9 of the California Code of Civil Procedure." (*Vu v. Prudential Property & Cas. Ins. Co.* (9th Cir. 2002) 291 F.3d 603, 605.) (Hereafter *Vu IV.*) Here ends the tale of *Vu.* If there was a *Vu V* it is not reported.

[37] *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1267 [109 Cal.Rptr.2d 611], citing an analysis by the Assembly Committee on the Judiciary of Senate Bill No. 1899 (1999–2000 Reg. Sess.) which became section 340.9.

[38] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1267. We grant 21st Century's request for judicial notice of the legislative history of Senate Bill No. 1899.

[39] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1267, quoting a Senate analysis of Senate Bill No. 1899.

[40] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1267, quoting from an analysis by the Senate Rules Committee.

has barred victims from being fairly compensated for their losses . . . [because they] were misled about the extent of damage done as a result of the earthquake.' "[41] A Senate analysis of the legislation cited news accounts stating " '[m]any victims . . . have received only partial settlements for their earthquake claims, and others have received no compensation at all, having been improperly told that the damage they suffered was below policy deductibles.' "[42] In subsequent years, when the victims tried to present newly discovered evidence of damage to their insurers, insurers " 'stonewalled claims, leaving homes, condominiums, and apartment building[s] in shambles and homeowners without any recourse.' "[43]

Undisputedly, the intent of section 340.9 was to provide such recourse.[44]

In reviewing the legislative record of section 340.9 we found its proponents and opponents were in agreement the effect of the legislation would be to grant certain insureds a new one-year period in which to file claims or lawsuits for damage they believed was caused by the Northridge quake. We did not find, however, any discussion of whether the doctrine of equitable estoppel might provide an alternative means for reopening claims which would otherwise be time-barred. Nor did any of the statute's supporters argue the legislation was necessary because claimants had been unable to use the doctrine of equitable estoppel to avoid having their claims barred by the one-year limitations period in Insurance Code 2071. If the Legislature was aware of the controversy in the federal courts over the availability of equitable estoppel to victims of the Northridge earthquake or of the pendency of the *Vu* case in the California Supreme Court that knowledge is not reflected in the legislative history of section 340.9.

There is, however, evidence the Legislature was aware of allegations of insurance company misconduct which, if established, could form the basis for a claim of equitable estoppel. This evidence consisted of reports insurers systematically misled policyholders about the nature and extent of the damage to their homes and improperly told them the damages they suffered was below their policy deductibles.

Again, both parties contend the legislative history of section 340.9 supports their position.

Cordova maintains it is clear from the statute's legislative history section 340.9 was intended to benefit the victims of the Northridge earthquake, not

---

[41] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1267, footnote 21.
[42] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1267, footnote 21.
[43] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1268, footnote 21.
[44] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1267.

their insurance companies. It defies logic, she argues, to believe the lawmakers who enacted section 340.9 to protect the earthquake's victims intended the statute to be used against those victims by the very parties whose wrongdoing spurred its enactment.

Furthermore, Cordova argues, there is nothing illogical or inconsistent in affording a clear and definitive statutory exception to the statutory limitations period to those insureds who discovered the true extent of their damage between January 1995 and January 2002 while at the same time preserving the long-standing common law remedy of equitable estoppel for those few remaining earthquake victims who did not discover the true extent of their damage until after January 2002 if they can show they reasonably relied on their insurers' initial misrepresentations as to their damage. There is some support for this argument in *Vu IV* in which the Ninth Circuit observed with respect to Vu's equitable estoppel claim section 340.9 "may provide an *alternative ground* for deciding this case."[45]

21st Century counters with the following arguments.

Although the text and legislative history of section 340.9 do not expressly address equitable estoppel it is logical to assume the members and staff of the committees drafting the legislation were aware courts had rendered conflicting decisions about the availability of equitable estoppel in cases arising under Insurance Code section 2071 and the issue was pending in the California Supreme Court, and that they decided not to wait for the eventual outcome of the Supreme Court's rather slow decisionmaking process which was by no means guaranteed to favor the insureds.[46] Instead the Legislature decided to short-circuit the judicial process and deal with the issue directly through legislation. But even if the Legislature was not aware of the recent litigation activity the result was the same—the Legislature decided for political reasons it, not the courts, would be the governmental institution which would get credit for "bringing needed relief to the victims of the Northridge earthquake." Being a political institution, and facing strong opposition to such relief from the insurance industry, the Legislature crafted a special form of relief available only for a limited time to a limited class of persons under specified circumstances.[47] In doing so it balanced the per-ceived need to provide a remedy to earthquake victims who had been unfairly treated by their insurance companies with the need to protect insurance companies from limitless exposure to liability on stale claims which would

---

[45] *Vu IV, supra,* 291 F.3d at page 605, italics added.

[46] The Supreme Court did not decide *Vu III, supra,* 26 Cal.4th 1142 until two years and seven months after the Ninth Circuit certified the estoppel question to the court.

[47] Section 340.9, subdivisions (a) through (d) set forth eligibility requirements, time limits and exceptions to the statute's coverage.

become more and more difficult to prove as the years went by. Thus, 21st Century argues, it is only logical to conclude the Legislature felt that, eight years after the Northridge earthquake, enough is enough.[48]

Again, both sides have presented cogent arguments as to what the legislative history of section 340.9 shows or does not show.

There is a certain appeal to Cordova's argument the Legislature would not have taken the sword of Insurance Code section 2071 out of the insurers' hands only to replace it with a canon in the form of section 340.9. And she is correct in pointing out there is nothing in the legislative history to indicate the Legislature thought it would be inconsistent to allow section 340.9 and equitable estoppel to operate as alternative remedies for earthquake victims whose original claims were not fairly settled.

On the other hand, as 21st Century points out, the Legislature is a political animal and it is not unusual for it to enact statutes which embody a compromise between opposing sides—here organizations representing policy-holders and organizations representing insurance companies. This would not be the first time the Legislature replaced a long-standing equitable remedy with an exclusive legal remedy.[49] The suggestion in *Vu IV* section 340.9 and equitable estoppel might serve as alternative remedies was obiter dictum because it came from the parties, not the court.[50]

We are not persuaded by 21st Century's argument the Legislature was responding to the insurers' concern about being faced with stale claims which would be difficult to prove. This would be a problem for both the insured and the insurer but a greater problem for the insured because it is she who ultimately carries the burden of proving her claim.

21st Century's theory the Legislature was attempting to reach a compromise between competing constituents is more plausible. According to this theory the lawmakers gave policyholders a statute which revived the limitations period on their claims, thereby obviating the need for them to satisfy the rigorous requirements of equitable estoppel, and gave insurance companies a definite time period after which they were assured they could no longer be exposed to liability on a claim. It could have happened that way, yet this does not mean it did happen that way or even that this is the most likely way it happened.

---

[48] The Northridge earthquake occurred in January 1994. Section 340.9 gave victims until January 1, 2002 to file new claims if they met certain other conditions.

[49] See *Pacific Scene, Inc. v. Penasquitos, Inc., supra,* 46 Cal.3d at pages 414–415.

[50] *Vu IV, supra,* 291 F.3d at page 605.

Clearly the Legislature intended to put a one-year lid on the statutory revival of time-barred claims but neither we nor 21st Century has found one sentence in the legislative history suggesting this one-year lid was intended to exclude equitable remedies for those who for some legitimate reason could not bring their claims within this one-year period.

Indeed it is the Legislature's "expressive silence"[51] which most convinces us it did not intend section 340.9 to supplant the doctrine of equitable estoppel with respect to claims for damages arising from the Northridge quake.

Equitable estoppel as we know it today originated in English courts of equity when the common law courts were too rigid in their reasoning to grant relief from grave injustices.[52] It is based on the fundamental principle " ' "no man [may] profit from his own wrongdoing in a court of justice[,]" ' [citation]"[53] and has been part of California's legal tradition almost since statehood.[54] In fact the doctrine of equitable estoppel is so engrained in American law it is arguably part of the concept of "fundamental fairness" embodied in the due process clause of the Fourteenth Amendment[55] and article 1, section 13 of our state Constitution.[56]

Surely the members and staff of the committees which considered Senate Bill No. 1899, most of whom were lawyers, were aware of the doctrine of equitable estoppel even if they were not aware of the *Vu* litigation specifically. If by enacting section 340.9 the Legislature intended to take away a remedy which has existed for hundreds of years one would expect to see discussion of such a step in the legislative history. But there is not a word in the legislative record about the doctrine of equitable estoppel. Nowhere does

---

[51] From a hymn by James Thomson (1730).

[52] *Glus v. Brooklyn Eastern Terminal* (1959) 359 U.S. 231, 232–234 [3 L.Ed.2d 770, 79 S.Ct. 760]; *Dickerson v. Colgrove* (1879) 100 U.S. 578, 582 [25 L.Ed. 618] (citing discussion of the doctrine by Lord Coke and others); and see Peacock, *An Equitable Approach to Products Liability Statutes of Repose* (1993) 14 Illinois University Law Review 223, 233. As previously noted one commentator traces the doctrine even further back in time. See footnote 19, *ante.*

[53] *Lantzy v. Centex Homes, supra,* 31 Cal.4th at page 383.

[54] In *Godeffroy v. Caldwell* (1852) 2 Cal. 489, 492 the Supreme Court described equitable estoppel as "a well settled rule of all courts of equity."

[55] See *Michigan v. Payne* (1973) 412 U.S. 47, 50 [36 L.Ed.2d 736, 93 S.Ct. 1966] (due process embodies " 'fundamental notions of fairness' ").

[56] *In re Marriage of Valle* (1975) 53 Cal.App.3d 837, 840 [126 Cal.Rptr. 38] ("the doctrine of equitable estoppel is a rule of fundamental fairness") and see Mosk, J. concurring and dissenting in *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 853 [4 Cal.Rptr.2d 615, 823 P.2d 1216] ("equitable estoppel is a rule of fundamental fairness"). In this case we need not decide whether a statute which denies the equitable remedy of estoppel to a particular class of persons would violate due process or equal protection because we hold section 340.9 does not have that effect.

any legislator or staff member say: "Oh, by the way, we're making another major change in the law here. We're extinguishing the right of all Northridge quake victims to obtain relief under the common law doctrine of equitable estoppel." It is not our role to speak for the Legislature when the Legislature has kept silent.

Our conclusion section 340.9 does not replace the doctrine of equitable estoppel is further supported by other extrinsic aids to statutory interpretation including " '. . . the ostensible objects to be achieved, the evils to be remedied, . . . public policy, . . . and the statutory scheme of which the statute is a part.' [Citation.]"[57]

In enacting section 340.9 the Legislature's object was "to alleviate a broad and significant problem caused by the insurers' conduct; to help thousands of policyholders who were misled by the insurers into waiving their right to make claims in a timely manner."[58] The evil to be remedied was the insurance companies' "rampant mishandling" of Northridge claims, their " 'systematic program of misleading' " their policyholders, and their " 'refus[al] to pay claims on the basis that the claims had become time-barred.' "[59] The public policy reflected in the legislation was to enforce the insurance companies' fiduciary duties to their policyholders[60] and "to advance the public interest in protecting insureds mistreated by their insurers at a time when the insureds were most vulnerable."[61] The statutory scheme of which section 340.9 is a part is the regulation of insurance policies including the time for bringing suit under the policy as set forth in Insurance Code section 2071. We have found no extrinsic evidence suggesting section 340.9 was intended to bar any new claims for earthquake damage after December 31, 2001.

Finally, we are not won over by 21st Century's argument that after the passage of a reasonable length of time (legislatively determined in section 340.9 to be eight years) insurers should be free from the burden of disruptive and protracted liability and able to plan their affairs with a degree of certainty; it is unreasonable to expose insurers to liability on claims made 10, 20 or 30 years after the Northridge quake.

This argument was impliedly rejected in *Lantzy v. Centex Homes* in which the court held the doctrine of equitable estoppel permits a plaintiff to bring an

---

[57] *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].

[58] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1271.

[59] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1267.

[60] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1264–1265.

[61] *20th Century Ins. Co. v. Superior Court, supra,* 90 Cal.App.4th at page 1274.

action for construction defects after the expiration of the "absolute" 10-year statute of limitations on such claims.[62]

■ As we previously explained, the burden of a late claim falls more heavily on the insured than the insurer. The insured first has to overcome the statute of limitations by producing evidence which would equitably estop the insurer from asserting the limitations period. This means proving the insurer was apprised of the facts; it intended its conduct be relied upon by the insured; the insured was ignorant of the true facts; and the insured reasonably relied on the insurer's conduct to her injury.[63] If the insured clears this hurdle she must also be able to prove the damage she is claiming was caused by the 1994 quake and not some other event. For these reasons we reject 21st Century's contention applying the doctrine of equitable estoppel to the remaining Northridge earthquake cases will expose insurers to unknown but significant liability.

But as to those insureds who can establish the requisite grounds for estoppel, fairness and equity require the risk of loss be shifted from the innocent policyholder to the insurance company whose wrongful conduct induced the policyholder to postpone bringing suit. Otherwise the courts wind up rewarding the insurer's wrongdoing. Even more disturbing, the biggest rewards would go to the insurance companies which best hid the truth from their insureds.

Accordingly we hold section 340.9 does not prevent Cordova from contending 21st Century is estopped from defending her action on the ground the statute of limitations in Insurance Code section 2071 has expired.

II. *THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO 21ST CENTURY ON THE BASIS OF CORDOVA'S FAILURE TO PRESENT EVIDENCE SUPPORTING HER CLAIM OF EQUITABLE ESTOPPEL.*

As an alternative ground for granting 21st Century's motion the trial court ruled that even assuming the doctrine of equitable estoppel could apply to actions covered by section 340.9 Cordova failed to submit any admissible evidence raising a triable issue of fact with respect to a claim of equitable estoppel. Cordova's failure to produce evidence rebutting 21st Century's

---

[62] *Lantzy v. Centex Homes, supra,* 31 Cal.4th at page 384.

[63] *Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37 [24 Cal.Rptr.3d 179, 105 P.3d 544].

affirmative defense based on the statute of limitations entitled 21st Century to a judgment as a matter of law.[64]

We reverse the trial court's ruling for two independent but related reasons.

■  Although styled a motion for summary judgment, 21st Century's motion was treated by 21st Century, Cordova, and the trial court (until it issued its decision) as a nonstatutory, common law motion for judgment on the pleadings. The notice of motion and supporting points and authorities did not rest on the premise Cordova could not establish a factual basis for asserting equitable estoppel against 21st Century, but on the grounds her complaint showed on its face it was not filed within the one-year period provided by section 340.9 and equitable relief from the one-year limitation period in Insurance Code section 2071 is not available. Furthermore, at oral argument in the trial court both parties agreed 21st Century's motion presented purely a legal question as to whether section 340.9 extinguished equitable remedies for failure to file within the statutory one-year period. It has long been the rule in this state that when a defendant's motion for summary judgment depends on the untenability of the plaintiff's case as pleaded and not on extrinsic evidence negating an element or proving an affirmative defense it may be treated as a common law motion for judgment on the pleadings.[65]

■  Cordova's failure to present evidence supporting a claim of equitable estoppel against 21st Century was raised for the first time in the trial court's written decision on the motion. By proffering an alternative ground for its ruling which was never asserted by 21st Century the trial court violated the settled principle summary judgment may not be granted on a ground not asserted by the moving party without giving the opposing party an opportunity to respond. The leading case on this point, *Juge v. County of Sacramento* explains: "[W]hen the trial court grants a summary judgment motion on a ground of law not explicitly tendered by the moving party, due process of law requires that the party opposing the motion must be provided an opportunity to respond to the ground of law identified by the court and

---

[64] Section 437c, subdivision (c) states: "[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Section 437c, subdivision (p)(2) states in relevant part: "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown . . . there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that . . . defense . . . ."

[65] See, for example, *American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1117–1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198].

must be given a chance to show there is a triable issue of fact material to said ground of law."[66]

21st Century argues the general principle articulated in *Juge* does not apply here because the record establishes Cordova could not have shown a triable issue of material fact as to her entitlement to equitable estoppel even if 21st Century had raised the absence of such evidence in the trial court.[67] It also notes there is no case law holding the opposing party must be given notification and an opportunity to respond to a new ground for granting the motion prior to the trial court's ruling. Cordova had opportunities to provide the omitted evidence through a motion for reconsideration, a motion for new trial, or a motion for relief on the ground of surprise but failed to do so.

We do not agree Cordova had a reasonable opportunity to present evidence supporting her claim of equitable estoppel after the trial court issued its ruling. An application for reconsideration may be based on "new or different facts"[68] but here the facts supporting equitable estoppel would necessarily have been within Cordova's personal knowledge all along so it is difficult to categorize them as "new or different."[69] For the same reason a motion for a new trial based on "[n]ewly discovered evidence" would be unsuccessful.[70] A motion for new trial or for relief from a judgment may be based on surprise.[71] Again, however, it might have been difficult for Cordova to convince the trial court she was "surprised" she had to comply with section 437c, subdivision (p)(2) by showing triable issues of fact existed with respect to 21st Century's statute of limitations defense. Mandatory relief based on an attorney's declaration of fault is only available when there has been a judgment of dismissal or default. Relief from summary judgment is within the discretion of the court.[72]

For the reasons explained above, we conclude it was error for the trial court to grant 21st Century's motion for summary judgment on the ground Cordova failed to produce evidence supporting her claim of equitable estoppel.

---

[66] *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 70 [15 Cal.Rptr.2d 598].

[67] See *Juge v. County of Sacramento, supra,* 12 Cal.App.4th at page 71.

[68] Section 1008, subdivision (a).

[69] Compare *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690 [68 Cal.Rptr.2d 228].

[70] Section 657, paragraph 4.

[71] Section 657, paragraph 3; section 473, subdivision (b).

[72] Section 473, subdivision (b); *Garcia v. Hejmadi, supra,* 58 Cal.App.4th at page 681.

DISPOSITION

The judgment is reversed. Appellant is awarded her costs on appeal.

Perluss, P. J., concurred.

**WOODS, J.,** Dissenting.—I respectfully dissent. I would affirm the judgment for the reasons hereafter set forth.

Initially, I agree with the majority that the facts recited are not in dispute. However, I take issue with the majority as to the legal effect of the undisputed facts.

I note that Cordova submitted no evidence showing a prima facie claim of equitable estoppel against 21st Century. I therefore would find no reason to reach the question whether plaintiff's claim of equitable estoppel would otherwise be barred by Code of Civil Procedure section 340.9. Similarly, I find no merit to Cordova's contention 21st Century or the trial court misled her into not presenting evidence to support her entitlement to equitable relief.

Code of Civil Procedure section 437c, subdivision (c) states: "[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Code of Civil Procedure section 437c, subdivision (p)(2) states in relevant part: "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown . . . there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that . . . defense . . . ."

21st Century's motion for summary judgment established a prima facie defense to this action by showing through undisputed admissible evidence the statutory period for bringing this action expired no later than January 2, 2002, and plaintiff did not file this action until September 26, 2002. This showing shifted to Cordova the burden to show by admissible evidence a triable issue of fact existed as to the statute of limitations defense. Cordova *argued* 21st Century was barred by the doctrine of equitable estoppel from raising a statute of limitations defense. She failed, however, to submit any admissible evidence raising a triable issue of fact with respect to her claim of equitable estoppel. Without such evidence, a decision on the question of whether Code of Civil Procedure section 340.9 precludes equitable claims would be merely an advisory opinion. California courts have no power to render advisory

opinions. (*People ex rel. Lynch v. Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].) Therefore, Cordova's failure to rebut 21st Century's affirmative defense entitled defendant to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (p)(2).) I note that the majority inventively turns 21st Century's motion for summary judgment into a "nonstatutory common law motion for judgment on the pleadings." By analogy, the majority has returned Cinderella to a condition of servitude well before the stroke of midnight was imminent. The motion before the trial court was clearly one for summary adjudication in the garden variety sense.

Cordova contends for the first time on appeal she was misled into not presenting evidence to support her claim of equitable estoppel because 21st Century did not raise the lack of such evidence as a ground for summary judgment. She also argues the trial court denied her due process by basing its decision to grant summary judgment on a ground not raised by the moving party. Neither argument has merit.

To succeed on its motion for summary judgment 21st Century only had to produce evidence of an affirmative defense; it did not have to show Cordova could not produce evidence to counter or avoid that defense. As Code of Civil Procedure section 437c, subdivision (p)(2) clearly states, once the defendant meets its burden of producing evidence of an affirmative defense "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that . . . defense[.]"

Furthermore, 21st Century's summary judgment motion reasonably could not have misled Cordova into believing she did not have to comply with Code of Civil Procedure section 437c, subdivision (p)(2) by showing triable issues of fact existed with respect to the statute of limitations defense. Admittedly the parties and the trial court were interested above all in the legal issue of whether Code of Civil Procedure section 340.9 blocked equitable remedies but this was not the only issue raised by 21st Century. In its notice of motion and in its points and authorities 21st Century maintained Cordova's complaint was barred by the limitations provisions of section 340.9 and therefore judgment should be entered in favor of 21st Century. This was Cordova's cue to come forward with evidence showing why the statute of limitations did not bar her action (e.g. by producing evidence showing in this case the doctrine of equitable estoppel barred 21st Century from asserting a statute of limitations defense).

In addition to raising the statute of limitations in its motion, 21st Century raised the issue at oral argument telling the trial court Cordova failed to meet the requirements of Code of Civil Procedure section 340.9 because she filed her action after the one-year period in the statute expired and therefore her action should be dismissed. Again Cordova missed the signal she needed to produce evidence to counter the defendant's affirmative defense.

Even after the trial court rendered its decision on the alternative ground Cordova had produced no evidence to support her claim of equitable estoppel Cordova took no steps to try to remedy the defect by producing the needed evidence. She did not move for a new trial. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858 [107 Cal.Rptr.2d 841, 24 P.3d 493].) She did not move for relief on the ground of mistake, inadvertence, surprise or excusable neglect. (Code Civ. Proc., § 473, subd. (b).) She did not move for reconsideration. (Code Civ. Proc., § 1008.)

Finally, in this appeal Cordova still has failed to identify any evidence she could advance to support her claim of equitable estoppel if given the opportunity.

Cordova has had four chances to produce evidence which would support her claim of equitable estoppel. I would decline to give her a fifth. I would affirm the judgment.

Respondent's petition for review by the Supreme Court was denied August 24, 2005.