[No. B179641. Second Dist., Div. Three. Apr. 14, 2006.]

RAYMONDA ASHOU, Plaintiff and Appellant, v.
LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Beverly Hills Law Associates, Stephen M. Losh and Angelica M. Leon for Plaintiff and Appellant.

Peterson & Bradford, Susan T. Olson and Lisa Kralik Hansen for Defendant and Respondent.

OPINION

**CROSKEY, Acting P. J.**—In *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230] (*Prudential-LMI*), the California Supreme Court held that the doctrine of equitable tolling applies to toll the statutory one-year suit provision in contracts of insurance. Under this doctrine, the one-year provision is tolled from the time the insured files a notice of claim to the time the insurer denies the claim. (*Id.* at p. 678.)

In this case, we consider whether an insurer's reopening and reconsideration of an earthquake claim tolls the revived one-year period to bring earthquake claims set forth in Code of Civil Procedure section 340.9 (section 340.9).[1] We conclude that it does, and therefore reverse the judgment of dismissal in favor of the insurer.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Raymonda Ashou's home was damaged in the Northridge earthquake. She was, at the time, employed by her insurer, Liberty Mutual Fire Insurance Company (Liberty Mutual). Liberty Mutual settled Ashou's claim for $52,000 in 1994. Ashou alleges both that she relied on Liberty Mutual's representation that this was a sufficient amount to repair her home *and* that she feared Liberty Mutual would retaliate against her "financially and professionally" if she contested any settlement offer it made.

The amount proved inadequate, as Ashou knew in 1997 when she was forced to sell her home at a loss because the damage was unrepaired. By this

---

[1] Section 340.9 provides:

"(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage.

"(b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period.

"(c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section.

"(d) This section shall not apply to either of the following:

"(1) Any claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section.

"(2) Any written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement."

time, Ashou was no longer employed by Liberty Mutual. Nonetheless, she did not request that her claim be reopened or bring suit against Liberty Mutual, as she believed her claim to be time-barred.

 In 2000, the California Legislature enacted section 340.9, which revived otherwise time-barred insurance claims arising out of the Northridge earthquake, as long as certain requirements were met. Specifically, the insured must have contacted the insurer prior to 2000; the claim could not have been litigated to finality prior to 2001; and the claim could not be the subject of a written settlement agreement between the insured and the insurer where the insured was represented by California counsel who signed the agreement. Most importantly, section 340.9 did not revive the claims indefinitely; any action under section 340.9 must be "commenced prior to, or within one year from, the effective date of this section." (§ 340.9, subd. (b).) The statute became effective on January 1, 2001.

Ashou became aware of this law.[2] In 2001, she hired Thomas Bemiller, a public adjuster, to handle her claim. On July 25, 2001, Bemiller "submitted Ashou's 1994 Claim for reopening to Liberty Mutual." The record is unclear as to when, exactly, Liberty Mutual agreed to reopen Ashou's claim. Nonetheless, it is undisputed that Liberty Mutual, at some point, reopened and reinvestigated Ashou's claim.

In December 2001, Bemiller was concerned that the renewed section 340.9 filing period was about to lapse. He therefore wrote Liberty Mutual requesting a waiver of its right to rely on the one-year period. Bemiller's letter was copied to Ashou. It stated, "I want to make it absolutely clear that my client does not want to file a lawsuit against Liberty Mutual but may be forced to do so if we do not get some type of extension to facilitate the adjustment process . . . . [¶] Most insurance carriers have granted such extensions. . . . Please advise me immediately, so I may advise the insured."

On December 20, 2001, Liberty Mutual responded as follows: "Liberty Mutual has reopened your client['s] original claim which was originally reported to us on January 19, 1994. As previously discussed, [Liberty Mutual]

[2] Ashou's initial complaint states that she "learn[ed] that the California [L]egislature passed a law allowing earthquake claim[s] to be reopened." This allegation is absent from the operative complaint.

has agreed to investigate our insured['s] claims for damages not discovered during our initial claims investigation in 1994. [¶] Please be advised, however, that Liberty Mutual retains the right to state any additional applicable exceptions or exclusions in the policy should they come to light under any additional information that you wish to provide us. [¶] [Liberty Mutual] does not intend by this letter to waive any policy provisions or defenses, and specifically reserves all its rights to assert any policy provisions or defenses at any time."

Ashou did not immediately file suit. Liberty Mutual continued to adjust Ashou's claim, until April 1, 2003, when it denied her claim.

Ashou filed the instant action against Liberty Mutual for breach of contract and bad faith on August 19, 2003.

There followed a series of demurrers and amended complaints. Liberty Mutual argued Ashou's complaint was obviously barred, having been filed 20 months after the one-year time period set forth in section 340.9 had lapsed. Ashou argued that the one-year period had been equitably tolled by Liberty Mutual's reconsideration of her claim; or, alternatively, that Liberty Mutual should be equitably estopped from relying on the statute by its continued reconsideration of her claim after the December 2001 exchange of letters. The trial court concluded that neither equitable tolling nor equitable estoppel applied, and sustained Liberty Mutual's demurrer to Ashou's third amended complaint without leave to amend. An order of dismissal was entered, and Ashou filed a timely notice of appeal.

## ISSUES ON APPEAL

We first consider whether the reopening of an earthquake claim can equitably toll the one-year period of section 340.9. We conclude that it can. However, it is unclear from the record whether Ashou's complaint was timely filed, even considering equitable tolling. We also consider whether Ashou has sufficiently pleaded equitable estoppel. We conclude Ashou has not, and cannot, plead that defense. We therefore reverse and remand for further consideration of whether the doctrine of equitable tolling saves Ashou's complaint.

## DISCUSSION

### 1. Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all

material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### 2. *Equitable Tolling*

■ Insurance Code section 2071 sets forth the California Standard Form Fire Insurance Policy. That form includes a clause providing, "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within 12 months next after inception of the loss." This provision or a similar one is written into each fire insurance policy issued in California and is part of the homeowner's policy issued to Ashou in this case. Although the clause is technically a contractual provision limiting the time in which a suit can be brought, it is statutory in origin and considered to be akin to a statute of limitations.

■ In *Prudential-LMI v. Superior Court, supra,* 51 Cal.3d 674, our Supreme Court considered whether this one-year period is tolled while the insurer is investigating a timely-submitted claim. The court concluded "the Legislature's intent to provide insureds with a full year (excluding the tolled period) in which to commence suit can be inferred from the fact that the period provided by [Insurance Code] section 2071 is considerably shorter than the usual four years for ordinary contracts [citation] and ten years for an action against developers for property damage caused by latent defects. [Citations.]" (*Id.* at p. 691.) The court further held that adoption of the doctrine was "consistent with the trend in other states toward equitable tolling of the one-year suit provision in the limited circumstances in which the insurer (or other party against whom the claim has been made) has received timely notice of the loss and thus is able to investigate the claim without suffering prejudice." (*Ibid.*)

Recognizing that "the purpose of a shortened limitation period was to obtain the advantage of an early trial of the matters in dispute and to make more certain and convenient the production of evidence on which the rights of the parties depended, and not to achieve a technical forfeiture of the

insured's rights by enforcing the limitation provision when the insured has given timely notice of a claim to his insurer," the court did "not believe that an equitable tolling of the one-year limitation period [would] frustrate the purpose of [Insurance Code] section 2071, or work a hardship on the insurer, whose investigation [would] necessarily have preceded the denial of coverage." (*Prudential-LMI, supra,* 51 Cal.3d at p. 691.)

 The court then enumerated five policy considerations which supported adoption of the doctrine of equitable tolling. "First, it allows the claims process to function effectively, instead of requiring the insured to file suit *before* the claim has been investigated and determined by the insurer. Next, it protects the reasonable expectations of the insured by requiring the insurer to investigate the claim without later invoking a technical rule that often results in an unfair forfeiture of policy benefits. . . . Third, a doctrine of equitable tolling will further our policy of encouraging settlement between insurers and insureds, and will discourage unnecessary bad faith suits that are often the only recourse for indemnity if the insurer denies coverage after the limitation period has expired." (*Prudential-LMI, supra,* 51 Cal.3d at p. 692.) Fourth, "[e]quitable tolling is also consistent with the policies underlying the claim and limitation periods—e.g., the insurer is entitled to receive prompt notice of a claim and the insured is penalized for waiting too long after discovery to make a claim. For example, if an insured waits 11 months after discovering the loss to make his claim, he will have only 1 month to file his action after the claim is denied before it is time-barred under [Insurance Code] section 2071." (*Ibid.*) Finally, a literal application of the one-year suit provision could create the anomalous situation where an insured's suit "would have been untimely before the insurer denied coverage." (*Id.* at pp. 692–693.)

The court concluded that the one-year suit provision begins to run from the date of inception of the loss, but is tolled "from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied." (*Prudential-LMI, supra,* 51 Cal.3d at p. 693.)

 While other cases had reached a similar result through the doctrines of waiver and estoppel, the court here relied on equitable tolling. A waiver "exists whenever an insurer intentionally relinquishes its right to rely on the limitations provision." (*Prudential-LMI, supra,* 51 Cal.3d at p. 689.) An estoppel arises when the insurer "induces the policyholder to forbear from filing suit." (*Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 145 [73 Cal.Rptr.2d 546] (*Singh*).) Equitable tolling is distinct from both of these doctrines. Its application does not depend on the insurer's express waiver or

inducement of reliance; it is a legal doctrine which comes into play, as a matter of law, by the simple fact of the insured's timely notice of claim to the insurer.[3]

### 3. Singh v. Allstate Ins. Co.

In this case, it is clear that the original one-year period in which to bring suit was tolled while Liberty Mutual investigated Ashou's claim, prior to settling it. That period of tolling ended at the date of settlement in 1994. (*Marselis v. Allstate Ins. Co.* (2004) 121 Cal.App.4th 122, 125 [6 Cal.Rptr.3d 668].)[4] The issue presented by this case is whether, seven years later, Liberty Mutual's reconsideration of Ashou's claim operated to toll the new one-year period to bring suit provided by section 340.9. The trial court concluded it did not, relying on *Singh, supra,* 63 Cal.App.4th 135, for the proposition that there can be no second period of equitable tolling.

*Singh* considered the following factual scenario. On April 27, 1994, the insured made a claim for fire damage, for a fire that had occurred that day. The insurer denied the claim on November 9, 1994, for breach of policy conditions, relating to the insureds' failure to secure the property following previous losses. (*Singh, supra,* 63 Cal.App.4th at p. 138.) On February 21, 1995, the insureds requested reconsideration of their claim, within 30 days, representing that they "did 'not wish to litigate this matter.' " (*Id.* at pp. 138–139.) On March 6, 1995, the insurer responded that it would provide a response within 30 days. On March 22, 1995, the insurer sent a letter stating,

---

[3] As there is some confusion in the briefs, we reiterate the point. "The doctrines of equitable tolling and equitable estoppel are distinct, . . . each arising under different circumstances, having different rationales and different predicates. Equitable estoppel does not 'extend' the statute of limitations ' "but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." ' Unlike the doctrine of equitable tolling, which takes its life from the statute of limitations itself, the doctrine of equitable estoppel ' "takes its life . . . from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice." ' " (*Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89, 96 [28 Cal.Rptr.3d 170], fns. omitted.)

[4] The tolling period stops when the insurer unequivocally denies the claim. (*Singh, supra,* 63 Cal.App.4th at pp. 142–143.) Relying on this authority, Ashou argues that the original settlement did not constitute a denial of her claim, so the tolling period never stopped. Liberty Mutual responds that the absence of an unequivocal denial means there was no tolling at all. *Marselis v. Allstate Ins. Co., supra,* 121 Cal.App.4th 122, clearly defeats these arguments, holding that, when a claim is *settled,* the tolling period stops when the payment is made. Any other theory "is irreconcilable with the reasons underlying the tolling rule. Since no claim was being investigated by [defendant insurer] after it paid [plaintiff insured], she was in no sense 'penalized' for time consumed by her insurer's investigation. And the 'central idea' of the limitations period would disappear entirely if an insured could preserve the right to bring suit for an indefinite period after receiving full payment on her claim." (*Id.* at p. 125.)

" '[a]fter reconsideration of your claim, [the insurer] respectfully informs you that the position taken in the November 9, 1994 correspondence to you remains unchanged and no policy benefits can be afforded.' " (*Id.* at p. 139.) The insureds filed suit, alleging bad faith, on December 5, 1995. (*Ibid.*)

As the insureds had immediately notified the insurer of the fire, the one-year period was tolled until November 9, 1994, leaving the insureds one year from that date within which to file suit. The insureds sued on December 5, 1995, missing the one-year date by less than one month. (*Singh, supra,* 63 Cal.App.4th at p. 140.) The insureds argued, however, that the one-year period had been *again* tolled, from their request for reconsideration through the insurer's denial of reconsideration, rendering their suit timely. (*Ibid.*)

The court first considered whether the policy reasons which led the Supreme Court to adopt equitable tolling in *Prudential-LMI* applied equally to a claim for a second period of tolling. The *Singh* court concluded they did not. "Once a claim has been made, the carrier has pursued its investigation, and the claim has been denied, the policies behind allowing equitable tolling have been fulfilled. The carrier's right to notice, and its ability to investigate and marshal any evidence it may need to defend, have been preserved. The insured has been provided at least some grounds, upon the denial, before being required to sue the carrier. Thereafter, however, the enforcement of the one-year limit works no injustice to either party." (*Singh, supra,* 63 Cal.App.4th at p. 142.) "The 'reconsideration' period was not required to enable the insurer to receive notice of the claim and to investigate the claim so as to preserve its rights to defend, if it ultimately denied the claim. The 'reconsideration' period did not come before plaintiffs had reason to know of their right to sue, or the expiration of the limitation in which to do so. Plaintiffs were aware of the right to sue, and of potential grounds, before any request for reconsideration. The justifications for equitable tolling are absent, once the carrier has initially denied the claim. The policies supporting the shortened limitation period are then fully applicable, and no reason for further tolling exists." (*Ibid.*)

Moreover, the court found further reasons to refuse a second period of equitable tolling. "[I]f the carrier's conduct after denying coverage expressly waives the one-year limit, or . . . induces the policyholder to forbear from filing suit, the doctrines of waiver and estoppel will avoid injustice on that score." (*Singh, supra,* 63 Cal.App.4th at p. 145.) Finally, "beginning a new period of equitable tolling based merely on a *request* for reconsideration would be anomalous. By this simple expedient of making many requests for

reconsideration, claimants could extend the one-year statute at will with successive periods of tolling." (*Ibid.*) Moreover, if responding favorably to a request for reconsideration could open a second period of tolling, insurers might be reluctant to grant policyholders reconsideration. (*Id.* at pp. 145–146.) In short, "once an unequivocal denial has been made, the insured's later requests for reconsideration do not serve the purposes of and do not extend the period of equitable tolling." (*Id.* at p. 148.)

### 3. *Section 340.9*

To determine whether the policies behind equitable tolling support applying the doctrine to the renewed one-year period of section 340.9, it is first necessary to understand the legislative history of that section. The legislative history was set forth at length in *Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89, 100–103. We quote from that opinion:

"It is undisputed the January 1994 Northridge earthquake resulted in billions of dollars in property damage thereby exposing insurance companies to significant liability.

"Many of the claims for earthquake damage were settled to the policyholder's satisfaction but many were not. Claims which were not satisfactorily settled generally fell into two categories. In some cases the insurance companies' adjusters misrepresented to the insureds their damage did not exceed their policy deductible. In other cases the insurance companies' adjusters found the damage exceeded the policy deductibles but misrepresented the true extent of the damage caused by the quake.

"Policyholders whose claims were denied or under-adjusted often did not learn the true extent of their damage until more than a year after the earthquake. When they attempted to have their insurance company reopen their claims or sued for breach of their insurance contracts the insurers threw up the bar of the one-year limitations period in Insurance Code section 2071. The policyholders responded with various arguments as to why their claims were not barred by the statute of limitations, including the argument the insurers were equitably estopped from asserting the limitations period because it was their own factual representations which had led the policyholders not to further pursue their claims within the one-year period. [¶] The policyholders' equitable estoppel arguments met with mixed results. [¶] . . . [¶]

"In 2000, . . . the California Legislature took steps ' "to bring needed relief to the victims of the Northridge earthquake" ' by enacting section 340.9. [¶] The legislative record shows section 340.9 was enacted in response to 'reports of rampant mishandling of insurance claims by insurers.' The author of the legislation claimed following the devastation caused by the Northridge quake many victims were devastated a second time when their insurance companies denied or low-balled their claims for compensation. And ' "when homeowners complained to the Department of Insurance to obtain relief, the department afforded no help." ' The Legislature received reports insurers ' "engaged in a systematic program of misleading consumers about the nature and extent of damage to their homes" ' and, when the deceived homeowners learned the true extent of their damage, ' "the insurers simply refused to pay claims on the basis that the claims had become time-barred." ' The legislation's author was quoted as stating ' "the one-year statute of limitations that is current law under Insurance Code section 2071 has barred victims from being fairly compensated for their losses . . . [because they] were misled about the extent of damage done as a result of the earthquake." ' A Senate analysis of the legislation cited new accounts stating ' "[m]any victims . . . have received only partial settlements for their earthquake claims, and others have received no compensation at all, having been improperly told that the damage they suffered was below policy deductibles." ' In subsequent years, when the victims tried to present newly discovered evidence of damage to their insurers, insurers ' "stonewalled claims, leaving homes, condominiums, and apartment building[s] in shambles and homeowners without any recourse." ' [¶] Undisputedly, the intent of section 340.9 was to provide such recourse.

"In reviewing the legislative record of section 340.9 we found its proponents and opponents were in agreement the effect of the legislation would be to grant certain insureds a new one-year period in which to file claims or lawsuits for damage they believed was caused by the Northridge quake." (*Cordova v. 21st Century Ins. Co., supra*, 129 Cal.App.4th 89, 100–103, fns. omitted.)

It is important to recognize that section 340.9 *only* reopens the filing window; it does not impose any further duties on insurers. (*20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1270 [109 Cal.Rptr.2d 611].) Section 340.9 does not work an impermissible impairment of contract "because it merely affects the remedy for the violation of the contract, not the obligations contained within it." (*Ibid.*)

4. *Equitable Tolling Applies to the One-year Period of Section 340.9 After a Grant of Reconsideration*

In determining whether to extend equitable tolling to the one-year period of section 340.9, we consider the policy decisions that motivated the Supreme

Court in *Prudential-LMI* to adopt equitable tolling of the original one-year suit provision of Insurance Code section 2071. Where applicable, we consider whether the policy considerations are fulfilled by the application of equitable tolling from the time the insured *seeks* reconsideration of a denied claim, or whether they are fulfilled by equitable tolling from the time the insurer *grants* the insured's request for reconsideration.

■ First, the *Prudential-LMI* court determined the legislative intent of Insurance Code section 2071 was to provide insureds a full one-year period, excluding the tolled period, within which to bring suit. A similar intent can be found in section 340.9. Believing the response of insurers, and the Department of Insurance, to the Northridge earthquake to have been completely inadequate, the Legislature enacted section 340.9, granting insureds a second bite at the one-year apple. We should construe and apply this one-year period in the same way as the initial one-year period of Insurance Code section 2071. In other words, the one-year period of section 340.9 should grant insureds one full year absent tolling to file suit. Moreover, equitable tolling would not frustrate the purposes of section 340.9, but would, in fact, promote them. While Insurance Code section 2071's shortened limitation period was intended to obtain the advantage of an early trial and to make more certain and convenient the production of evidence, section 340.9 had a different purpose. The Legislature understood that it was allowing suits on claims that were seven years old, but the Legislature concluded the initial response of the insurance industry, as a whole, to the earthquake was so insufficient that these claims should be allowed to proceed to suit, even after the substantial passage of time. Equitable tolling would lengthen that time a bit more, in order to allow the insurers to conduct the full investigations which they had failed to do when the claims were first made. Equitable tolling is fully supported by the legislative intent behind section 340.9.

■ However, while an insurer is contractually obligated to conduct a timely investigation of an *initial* claim, an insurer has no such obligation with respect to a request for reconsideration of a denied claim. Section 340.9 does not change the duties imposed by the insurance contract. Therefore, it does not require an insurer to reopen a previously denied claim, or even respond to a request for reconsideration. As one of the purposes of equitable tolling is to allow the insurers time to conduct full investigations into claims made, equitable tolling should only apply—in the context of a previously denied claim—when the insurer has agreed to reopen and reinvestigate the claim. Application of equitable tolling from the time of a *request* to reopen the claim

would require insurers to respond to all such requests or risk being subject to suit on those claims *indefinitely*. This impairment of the contractual relationship between insured and insurer is not contemplated by section 340.9, which is exclusively concerned with remedy.

We now consider each of the five policy considerations that supported equitable tolling in *Prudential-LMI*. First, we consider whether equitable tolling of section 340.9 would allow the claims process to function effectively, instead of requiring the insured to file suit before the claim has been fully investigated by the insurer. When limited to claims which the insurer has agreed to reopen, this policy is advanced by equitable tolling, as it would allow the insurer to reconsider a perhaps hastily closed claim before the insured brings suit under section 340.9. However, the policy would not be advanced by applying equitable tolling from the time the insured *seeks* reconsideration, as, unless the insurer agrees to reconsider the claim, there is no "claims process" which needs the time to function.

Second, we consider whether equitable tolling protects the reasonable expectations of the insured by enabling the insurer to investigate the claim without later invoking a technical rule to bar suit. Again, this policy is advanced by applying equitable tolling to claims that have already been reopened, as the insurer has a reasonable expectation that a reopened claim will be investigated to completion. However, an insured does not have a reasonable expectation that a request for reconsideration will cause a full investigation; therefore, the policy is not advanced by applying equitable tolling from a request for reconsideration.

Third, we consider whether the doctrine of equitable tolling will further the policy of encouraging settlement between insurers and insureds. When an insurer has granted reconsideration, settlement without litigation is a legitimate possibility and equitable tolling allows such settlement to occur. However, when an insured has sought reconsideration but the request has not been acted upon or has been expressly denied, the status of the claim remains denied, and there is no extant settlement possibility that would be encouraged by delaying suit.

Fourth, the *Prudential-LMI* court stated, "[e]quitable tolling is also consistent with the policies underlying the claim and limitation periods—e.g., the insurer is entitled to receive prompt notice of a claim and the insured is penalized for waiting too long after discovery to make a claim. For example, if an insured waits 11 months after discovering the loss to make his claim, he

will have only 1 month to file his action after the claim is denied before it is time-barred under [Insurance Code] section 2071." (*Prudential-LMI, supra,* 51 Cal.3d at p. 692.) These policy considerations apply equally to equitable tolling under section 340.9. The insured has only the one year provided by section 340.9 within which to bring suit, and an insured who delays 11 months from January 1, 2001, before obtaining reconsideration will have only a single month left after the claim is denied to bring suit. However, we again note that an insurer has no obligation to respond to a request for reconsideration, and an insured should not be permitted to extend the one-year period simply by requesting reconsideration.[5]

Fifth, we consider whether the failure to provide for equitable tolling could create the anomalous situation where an insured's suit would have been untimely before the insurer denied coverage. We are concerned here with claims that have already been denied.[6] Suits can therefore be brought on those claims at any time, if not otherwise barred. The only time in which the anomaly would arise would be after the insurer has agreed to reopen the claim. In such a situation, if we did not allow for equitable tolling, suit might be untimely before the insurer has completed its reinvestigation of the claim. This policy, too, weighs in favor of applying equitable tolling from the time the insurer reopens a claim.

Finally, we believe the circumstances of reconsideration of a claim pursuant to section 340.9 distinguish this case from *Singh*. In *Singh*, little had changed between the insurer's initial denial of the claim and the insured's request for reconsideration. In this case, between the insurer's initial denial of the claim and the insured's request for reconsideration, the Legislature found the insurance industry's response to the Northridge earthquake to have been so inadequate that it was necessary to enact blanket legislation allowing suits on earthquake claims that would otherwise have been time-barred. If an insurer, in light of that change in the law, acquiesced in an insured's request to reconsider the claim, that reconsideration process should be allowed to continue its course without being prematurely halted by a lawsuit. Equitable tolling meets that goal.

---

[5] The *Singh* court was concerned that by tolling the time period based on a *request* for reconsideration, an insured could improperly extend the time period by simply making repeated reconsideration requests. (*Singh, supra,* 63 Cal.App.4th at p. 145.)

[6] Section 340.9 does not allow suit to be brought on *new* earthquake claims, but only on claims "in which an insured contacted an insurer . . . prior to January 1, 2000, regarding potential Northridge earthquake damage." (§ 340.9, subd. (a).)

### 5. *It Is Unclear Whether the Application of Equitable Tolling Will Be Sufficient to Preserve Ashou's Action*

It is not clear from the record on appeal whether application of the doctrine of equitable tolling renders Ashou's suit timely.[7] Under section 340.9, Ashou could bring her action "within one year from" January 1, 2001. (§ 340.9, subd. (b).) In other words, the last day on which Ashou could have filed suit was December 31, 2001.[8] (*Cordova v. 21st Century Ins. Co., supra,* 129 Cal.App.4th at p. 93.)

The record is unclear as to when Liberty Mutual granted reconsideration of Ashou's claim, thus tolling the one-year period. Throughout the proceedings before the trial court, Ashou clearly alleged Liberty Mutual "agreed to reopen and investigate" her claim on December 20, 2001. Ashou's opening brief on appeal similarly argues that, although Ashou repeatedly requested the status of her request to reopen from July through December 2001, Liberty Mutual did not agree to reopen until December 20, 2001. Yet if Liberty Mutual did not agree to reopen Ashou's claim until December 20, 2001, the one-year period was *not* equitably tolled prior to this date. At the time tolling began, only 11 days remained in the period. Ashou's reconsidered claim was denied on April 1, 2003, and she therefore had 11 days within which to bring suit after that date. She did not file her complaint until August 19, 2003, some 140 days after the denial. Thus, if Liberty Mutual did not agree to reopen Ashou's claim until December 20, 2001, Ashou's complaint is untimely, even with equitable tolling.

However, in Liberty Mutual's brief, Liberty Mutual stated, "In August 2001, Liberty [Mutual] acknowledged the [reopened] claim," and characterized the December 20, 2001 letter as "confirm[ing] that [Ashou]'s claim had been [reopened]." There are two record citations for the proposition that Liberty Mutual acknowledged the reopened claim in August 2001. The first is a reference to Ashou's third amended complaint, in which she alleges, "On or about August of 2001, Liberty Mutual sent . . . Bemiller a confirming receipt of Ashou's timely [section] 340.9 claim. Liberty Mutual was on notice that . . . Ashou sought to reopen her Claim under [section] 340.9 since August 12, 2001, however, failed to communicate with . . . Bemiller for months." The second record citation is to Bemiller's letter to Liberty Mutual of December

---

[7] The parties failed to address the issue in their briefs. We have requested and received additional briefing on the point. We have fully considered these additional arguments.

[8] The parties assume Ashou could have filed as late as January 2, 2002, presumably on the theory that the "one year" language gives Ashou until January 1, 2002, and that she had an extra day in which to file because that day was a holiday. We need not consider whether the last day to file was December 31, 2001, or January 1, 2002; if Ashou's action was untimely, it was untimely by more than a day.

10, 2001, in which he states, "On August 31, 2001 I received a letter from you dated August 22, 2001 noting the assignment of Richard Bennett to the file." The record does not contain copies of any letters sent between the parties in August 2001, so we cannot determine whether any letter indicates Liberty Mutual reopened the claim,[9] and, if so, whether it was sent on August 12 or August 22.

In response to Liberty Mutual's brief, Ashou filed a reply brief in which she now asserted that "In August of 2001, [Liberty Mutual] acknowledged that the claim had been reopened for investigation."

If Liberty Mutual reopened Ashou's claim as early as August 12, 2001, the tolling began on that date. The period from August 13 to December 31, 2001, constitutes 141 days. Ashou therefore had 141 days after her reopened claim was denied (and the tolling stopped) within which to file suit. As stated above, she filed suit 140 days after her claim was denied, rendering it timely.

If, however, Liberty Mutual reopened Ashou's claim on August 22, 2001, the tolling did not begin until August 23, and Ashou had only 131 days after her reopened claim was denied within which to file suit. Under this scenario, her complaint was untimely.

As there is substantial confusion in the record as to exactly when Liberty Mutual reopened Ashou's claim and the tolling period began, we remand to allow Ashou an opportunity to amend her complaint and allege facts which would render her complaint timely, if she is able truthfully to do so.

### 6. *Equitable Estoppel Does Not Apply*

Ashou also argues that, regardless of the application of the principles of equitable tolling, Liberty Mutual should be estopped to rely on the one-year period of section 340.9 due to its continued reconsideration of her claim long after December 31, 2001.

■ "In California, an insurer may be estopped to assert a policy provision limiting the time to sue where it has caused the insured to delay filing suit until after the expiration of the time period." (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1090 [34 Cal.Rptr.3d 157].) " ' "Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act

---

[9] Based on the record before us, we have some question as to whether it did. A letter "confirming receipt" of a request to reopen a claim is *not* an agreement to reopen it.

that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." ' " (*Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1268 [84 Cal.Rptr.2d 552].)

At the very least, Ashou cannot establish the second element necessary for equitable estoppel. Ashou argues that Liberty Mutual was estopped to rely on the time bar of section 340.9 by its continued reconsideration of her claim after December 31, 2001, had passed. But she cannot prove Liberty Mutual intended its reconsideration of the claim to be relied upon, or acted in such a way that Ashou had a right to believe it so intended. On December 10, 2001, Ashou's authorized representative wrote Liberty Mutual specifically requesting Liberty Mutual waive the time bar of section 340.9. Liberty Mutual responded by letter stating that, although it would reconsider Ashou's claim, it *would not* waive any defenses. As Liberty Mutual's letter *expressly stated* it would not waive defenses, Ashou cannot prove Liberty Mutual intended its continued investigation of her claim to lull her into a false sense of security regarding the time bar of section 340.9.

In California, an alternative basis for equitable estoppel exists. "Insurers are required by the relevant regulations . . . to notify a claimant of any applicable time limits that might apply to the claim. Unless it can be shown that the claimant in fact had actual knowledge of it, the insurer may be estopped to assert any time limit as to which the required notification was not given." (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange, supra,* 132 Cal.App.4th at p. 1091.) To the extent Ashou argues Liberty Mutual is equitably estopped to rely on the limitation period of section 340.9, we conclude Ashou's claim is barred by her actual knowledge of the statute. Although Ashou's third amended complaint conveniently omits her allegation that she was aware of section 340.9, her opening brief specifically states that she hired Bemiller to represent her "upon being informed of the passage of [section] 340.9." Moreover, Bemiller's December 10, 2001 letter requesting an "extension" of the one-year period indicates that it was copied to Ashou.[10] As Ashou has conceded knowledge of section 340.9 and the exhibit attached to her complaint shows that she was further aware of her agent's request for an extension of the time within which to file suit, Ashou cannot prove she did not know of the one-year deadline of section 340.9.

---

[10] The letter, attached to Ashou's operative complaint, indicates that a sample extension letter was attached to it, although the sample extension letter was not attached to the copy attached to the complaint. Liberty Mutual attached a copy of the attached sample extension letter to its demurrer to the complaint. The sample extension letter sets forth the language of section 340.9 and expressly states, "Under this law, any insureds requesting that their claims be [reopened] under [section] 340.9 have until December 31, 2001 to file a lawsuit against their insurance company to pursue their renewed [section] 340.9 claim."

## *DISPOSITION*

The order of dismissal is reversed and the matter is remanded. The trial court is directed to vacate its order sustaining Liberty Mutual's demurrer without leave to amend, and enter a new and different order sustaining the demurrer with leave to amend. Ashou should be permitted to amend her complaint to allege, if she truthfully can do so, a precise date that Liberty Mutual agreed to reconsider her claim that would render her complaint timely under the doctrine of equitable tolling. The parties are to bear their own costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 3, 2006.