**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JEAN RUSTICO and JOHN RUSTICO, *Plaintiffs-Appellants*, v. INTUITIVE SURGICAL, INC., *Defendant-Appellee*. | No. 20-15009 D.C. No. 5:18-CV-02213-LHK OPINION |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted February 11, 2021
San Francisco, California

Filed April 6, 2021

Before: Kim McLane Wardlaw and Carlos T. Bea, Circuit
Judges, and James David Cain, Jr.,[*] District Judge.

Opinion by Judge Bea

---

[*] The Honorable James David Cain, Jr., United States District Judge
for the Western District of Louisiana, sitting by designation.

## SUMMARY[**]

### Choice-of-Law / Statute of Limitations

The panel affirmed the district court's summary judgment in favor of Intuitive Surgical, Inc., and held that a diversity product liability action was barred by the two-year statute of limitations in Cal. Code of Civ. Pro. § 335.1.

Plaintiffs Jean and John Rustico were both citizens and residents of Connecticut at the time of the alleged injury, and Intuitive was a Delaware corporation with its headquarters in California. Jean Rustico experienced complications with Intuitive's *da Vinci* surgical robot during her surgery in Connecticut in January 2012. In January 2013, a year before the expiration of California's statute of limitations, Intuitive proposed a general tolling agreement to all putative claimants who sought to file personal injury claims arising out of the *da Vinci* surgical robot. On February 3, 2014, counsel for the Rusticos emailed Intuitive and submitted a list of names that included the Rusticos to be included in the Tolling Agreement.

The panel held that the California – not Connecticut – statute of limitations applied. The panel applied the three-step California "government interest" analysis for resolving the choice-of-law question. Under step one, the parties agreed that the laws of California and Connecticut differed, with California having a two-year statute of limitations for product liability claims, and Connecticut having a three-year

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

statute of limitations. Absent tolling, the Rusticos' claims would be untimely under California law but timely under Connecticut law. Under step two, the panel determined what interest, if any, the respective states had in seeing their respective laws applied to the case. The panel held that California had legitimate interests in the application of its statute of limitations here because it would protect Intuitive, which is headquartered in California, and protect the district court, which is located in California, from the burden of litigating the Rusticos' expired product liability claims. The panel held further that the district court erred in failing to consider whether Connecticut had any interest in seeing its own statute of limitations applied. The panel held, however, that despite this error, reversal was not warranted. The Rusticos failed to prove that they were members of the class of persons whom Connecticut's statute of limitations was designed to protect. Because California – but not Connecticut – had a legitimate interest, there was a "false conflict" that led the panel to apply California law. The panel noted that even if it inferred that Connecticut had some interest in the application of its law, and the panel proceeded to step three, it was clear that California had a much stronger interest that would be more impaired if its law were not applied.

The panel held that the Tolling Agreement did not render the Rusticos' claims timely. Although counsel executed the agreement on August 9, 2013, the Tolling Agreement did not commence until counsel submitted Mr. Rustico's name on February 3, 2014, which was a few weeks after the two-year anniversary of Ms. Rustico's surgery, and California's two-year statute of limitations had expired. Because the Tolling Agreement expressly preserved Intuitive's statute-of-limitations defense for the applicable jurisdiction, Intuitive

was entitled to employ its statute-of-limitations defense under California law.

The panel held that equitable estoppel did not apply to the Rusticos' claims. The Rusticos failed to submit any evidence that identified a misrepresentation, material omission, or false promise made on behalf of Intuitive.

**COUNSEL**

David B. Newdorf (argued), Newdorf Legal, Oakland, California; Marc J. Mandich (argued), François M. Blaudeau, and Evan T. Rosemore, Southern Med Law, Birmingham, Alabama; Ronnie G. Penton, Penton Law Firm, Bogalusa, Louisiana; Nancy L. Hersh, Hersh & Hersh LLP, San Francisco, California; for Plaintiffs-Appellants.

Allen J. Ruby (argued) and Emily Reitmeier, Skadden Arps Slate Meagher & Flom LLP, Los Gatos, California, for Defendant-Appellee.

**OPINION**

BEA, Circuit Judge:

Even when all goes as planned, surgery is risky. Technological advancements, like robotic assistance, may reduce a doctor's surgical footprint and decrease some of the risks. But technology is not always perfect. Sadly, parts sometimes break or malfunction. And when they do, patients tend to sue, which can pose complex choice-of-law challenges in actions against national manufacturers. That is exactly what happened here.

Jean Rustico, a Connecticut citizen and resident at the time, underwent a robotically assisted surgery in Connecticut. The doctor attempted to perform the surgery using the *da Vinci* surgical robot, which was designed and manufactured in California by Intuitive Surgical, Inc. ("Intuitive"). Unfortunately, the surgical robot malfunctioned and caused internal injuries. Another doctor was able to intervene and repair the injuries, but Ms. Rustico eventually sought damages from Intuitive for its allegedly defective product.

In an attempt to forestall litigation before she filed suit, Intuitive offered Ms. Rustico an agreement to toll "the applicable statute of limitations" on her anticipated claims, presumably to provide time in which to negotiate a possible settlement. When the tolling agreement was offered, Ms. Rustico still had months to file her action before California's statute of limitations would expire. But, by the time Ms. Rustico decided to enter into the agreement, California's two-year statute of limitations—but not Connecticut's three-year statute of limitations—had expired. Nonetheless, Ms. Rustico filed product liability claims against Intuitive in California. The district court granted Intuitive's motion for summary judgment on the basis that California's statute of limitations barred the claims. On appeal, we are tasked with deciding whether the applicable choice-of-law analysis should have led to Connecticut's longer statute of limitations, thereby allowing Ms. Rustico to pursue her claims against Intuitive.

## I.  BACKGROUND

Jean and John Rustico, husband and wife (collectively, the "Rusticos"), were both citizens and residents of

Connecticut at the time of the alleged injury.[1]  Intuitive, a Delaware corporation with its headquarters in California, designed, manufactured, and sold the *da Vinci* surgical robot—and continues to do so.  Subject-matter jurisdiction was based on diversity of citizenship.  *See* 28 U.S.C. § 1332. The Rusticos allege in the operative complaint that Intuitive "has a substantial business presence in California."  For example, they allege that Intuitive "directs its operations out of California"; Intuitive's "decision to use faulty insulation and other faulty components, accessories and instrumentation and the decision to not report information about the defective product were all made in California"; Intuitive's "failure to identify the dangers inherent in its product occurred in California"; and Intuitive's "promotional materials and advertisements all originate in California."

### A. Ms. Rustico experiences complications with Intuitive's *da Vinci* surgical robot during her surgery in Connecticut

On January 12, 2012, Ms. Rustico underwent robotically assisted surgery in Connecticut to remove an ovarian mass. Dr. Clare Zhou attempted to perform the surgery using the *da Vinci* surgical robot, which was designed, manufactured, and sold by Intuitive.  During the surgery, however, Dr. Zhou noticed that the surgical robot had malfunctioned, causing "an adventitial injury about 3–5mm in size." Dr. Zhou quickly contacted a vascular surgeon, who intervened and repaired the injury.  Dr. Zhou then abandoned the robotic assistance, which was intended to be minimally

---

[1] The operative complaint asserts that the Rusticos are citizens of Florida.  During oral argument, however, both parties agreed that the Rusticos were citizens of Connecticut at the time of the surgery.

invasive, and completed the rest of the procedure without the *da Vinci* surgical robot. Ms. Rustico was discharged in good condition a few days later.

Shortly after the surgery, Dr. Zhou informed the Rusticos about the "complications from the robotic surgery." Dr. Zhou explained that the *da Vinci* surgical robot had malfunctioned and caused Ms. Rustico's internal injury. A few days later, Dr. Zhou prepared a report that described these complications and concluded that the *da Vinci* surgical robot's malfunctioning had caused Ms. Rustico's injuries.

Ms. Rustico's experience with the *da Vinci* surgical robot was not an isolated incident. In 2010 alone, Intuitive received over 130 complaints from patients who suffered similar complications.

**B.  The parties enter into the Tolling Agreement**

In January 2013, a year before the expiration of California's statute of limitations, Intuitive proposed a general tolling agreement to all putative claimants, including Ms. Rustico, who sought to file "personal injury claims" against Intuitive arising out of its *da Vinci* surgical robot (the "Tolling Agreement"). The Tolling Agreement provided that the Rusticos would promise "to delay the filing of any lawsuit," but, if they were to file any lawsuit, they would do so "in the Northern District of California only and only in the form of a single plaintiff family complaint." In exchange, Intuitive would promise "to toll the applicable statute of limitations for a three month period starting on the date Intuitive Surgical is provided with [Ms. Rustico]'s name." Although the Tolling Agreement did not contain a choice-of-law provision regarding the "applicable" jurisdiction, it provided an express disclaimer regarding Intuitive's statute-of-limitations defense:

The tolling of the *applicable statute of limitations* is not intended to and shall not for any purpose be deemed to limit or adversely affect any defense, other than a statute-of-limitations defense, that Intuitive Surgical has, may have, or would have had in the absence of this agreement. *Nor does this agreement waive or release any statute of limitations defense that could have been asserted before the date of the tolling period.* Upon the completion of the tolling period, Intuitive Surgical will have all defenses available to it as it had on the first day of the tolling period.

(emphasis added).

On August 9, 2013, more than five months before the expiration of California's statute of limitations, counsel for the Rusticos, who was representing numerous putative claimants against Intuitive for its *da Vinci* surgical robot, returned an executed copy of the Tolling Agreement. It is undisputed, however, that the Rusticos' claims were not tolled on this date. The parties agree that, under the terms of the Tolling Agreement, tolling did not commence until Intuitive was "provided with [Ms. Rustico]'s name," which had not yet occurred.

On February 3, 2014—over two years after Ms. Rustico's surgery and nearly six months after counsel had executed the Tolling Agreement—counsel for the Rusticos emailed Intuitive and submitted a list of names "for the purpose of including these folks as of today's date in the [Tolling Agreement]." Ms. Rustico's name was on that list.

The parties agree that the Rusticos' claims were tolled on this date until she filed the instant action.

### C. The Rusticos file product liability claims in California

In April 2018, after extending the Tolling Agreement several times, the Rusticos filed product liability claims against Intuitive in the Northern District of California. The district court ultimately granted Intuitive's motion for summary judgment on the grounds that the Rusticos' claims were time-barred. In doing so, the district court applied California's choice-of-law rule—the "governmental interest" test—and concluded that California's two-year statute of limitations—rather than Connecticut's three-year statute of limitations—governed the claims. Because Ms. Rustico's surgery occurred on January 12, 2012, and because the Tolling Agreement did not become effective until Intuitive received Ms. Rustico's name on February 3, 2014, the district court held that California's statute of limitations barred the Rusticos' claims. The Rusticos appeal from this decision.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.

We review de novo the district court's decision to grant summary judgment. *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 672 (9th Cir. 2018). We "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Buffets, Inc. v. Klinke*, 73 F.3d 965, 967 (9th Cir. 1996).

## III.   DISCUSSION

### A. The California—not Connecticut—statute of limitations applies

It is well-established that in diversity cases, such as this one, "federal courts must apply the choice-of-law rules of the forum state." *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In California, the state in which the forum sits, courts have "adopted and consistently applied the so-called 'governmental interest' analysis as the appropriate general methodology for resolving choice-of-law questions." *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 524 (Cal. 2010).[2]  This approach generally involves three steps:

> First, the court must determine whether the substantive laws of California and the foreign jurisdiction differ on the issue before it. Second, if the laws do differ, then the court must determine what interest, if any, the competing jurisdictions have in the application of their respective laws. If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a "false conflict" and the law of the interested jurisdiction is applied. But if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the comparative

---

[2] The parties agree that the district court properly determined that California's choice-of-law rule, the "governmental interest" test, applies here.

> impairment of the interested jurisdictions. This third step requires the court to identify and apply the law of the state whose interest would be the more impaired if its law were not applied.

*Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 559 (9th Cir. 2020) (internal citations omitted).

Under step one, the parties agree that the laws of California and Connecticut differ. California has a two-year statute of limitations for most tort claims alleging personal injury, including product liability claims. *See* Cal. Code Civ. P. § 335.1. Connecticut, by contrast, has a three-year statute of limitations specifically for product liability claims. *See* Conn. Gen. Stat. § 52-577a. Assuming for now that no tolling is warranted, the Rusticos' claims would be untimely under California law—but timely under Connecticut law— because they entered into the Tolling Agreement on February 3, 2014, which was more than two (but less than three) years after Ms. Rustico's surgery on January 12, 2012.

Next, under step two, we must determine what interest, if any, California and Connecticut have in seeing their respective laws applied to this case. *See Cooper*, 960 F.3d at 560 (citing *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 724–25 (Cal. 1978)). "Only if each jurisdiction involved has a legitimate but conflicting interest in applying its own law will there be a 'true conflict,' requiring us to move on to step three of the analysis." *Id.* (quoting *Offshore Rental*, 583 P.2d at 725–26). The district court held that "California is the only interested state" because (1) the sole defendant is from California and (2) the forum is in California. Because the district court determined that a "false conflict" existed, it declined to proceed to step three

to compare the nature and strength of each state's interest in seeing its own law applied.

We have no doubt that California has legitimate interests in the application of its statute of limitations here. We have acknowledged that California's statute of limitations serves two purposes: (1) "it protects state residents from the burden of defending cases in which memories have faded and evidence has been lost," and (2) "it protects the courts of the state from the need to process stale claims." *Ledesma*, 816 F.2d at 485 (internal citation omitted). Here, the application of California law would serve the dual purpose of protecting Intuitive, which is headquartered in California, and protecting the district court, which is located in California, from the burden of litigating the Rusticos' expired product liability claims.

Our prior holding in *Nelson v. International Paint Co.*, 716 F.2d 640 (9th Cir. 1983) is particularly instructive here. In *Nelson*, a Texas plaintiff was injured in Alaska and brought tort claims against a California defendant in California. *Id.* at 642. We addressed whether the district court properly applied California's shorter statute of limitations, rather than Texas's or Alaska's longer statute of limitations. *Id.* at 644–45. Relying on *Ashland Chemical Co. v. Provence*, 181 Cal. Rptr. 340 (Ct. App. 1982), we affirmed and held that "[o]nly California has an interest in having its statute of limitations applied" because the forum is in California and the sole defendant is from California. *Nelson*, 716 F.2d at 644–45; *see also Ashland*, 181 Cal. Rptr. at 341 (holding that "California is the only interested state" even though "Kentucky is the plaintiff's domicile, the place of contracting, and the place of payment" because "none of these contacts gives Kentucky an interest in having its statute of limitations applied"). We reasoned that "California courts

and a California resident would be protected by applying California's statute of limitations," so the application of California law "would . . . advance its underlying policy." *Nelson*, 716 F.2d at 644–45 (quoting *Ashland*, 181 Cal. Rptr. at 341–42) (explaining that "Kentucky has no interest in having its statute of limitations applied because . . . . there are no Kentucky defendants and Kentucky is not the forum"). Indeed, "California's interest in applying its own law is strongest when [like here] its statute of limitations is shorter than that of the foreign state, because a 'state has a substantial interest in preventing the prosecution in its courts of claims which it deems to be stale.'" *Deutsch v. Turner Corp.*, 324 F.3d 692, 717 (9th Cir. 2003) (quoting Restatement (Second) of Conflict of Laws § 142 cmt. 4 (1998)); *see also id.* at 716–17 ("Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law, and especially so where California's statute would bar a claim." (internal citation omitted)).

That said, although California has a strong interest in seeing its statute of limitations applied here, the district court erred by failing to consider whether Connecticut has any interest in seeing its own statute of limitations applied. Intuitive advocates that we adopt a strict, straightforward approach whereby courts would automatically apply California law whenever a California resident is sued in California. Not only have we rejected such a "per se rule," *Ledesma*, 816 F.2d at 484, but we have also recognized "rare exceptions" to the general rule, *see, e.g.*, *Aalmuhammed v. Lee*, 202 F.3d 1227, 1237 (9th Cir. 2000) (reversing and applying New York's longer statute of limitations—instead of California's shorter one—even though the suit was brought in California against a California defendant because "New York's connection with [plaintiff]'s claim [regarding

a movie script] is considerably more substantial, immediate and concrete than California's" because the movie was filmed in New York).   Courts, therefore, must assess "whether *each* jurisdiction has legitimate interests in seeing its own law applied." *Cooper*, 960 F.3d at 560 (emphasis added); *see also Ashland*, 181 Cal. Rptr. at 341 (identifying the parties' contacts with both California and Kentucky and determining that "none of these contacts gives Kentucky an interest in having its statute of limitations applied").

Despite this error, however, reversal is not warranted. The Rusticos contend that Connecticut has a particularly strong interest in protecting its citizens from defective products because Connecticut's statute of limitations pertains only to product liability claims—unlike California's statute of limitations, which "applies generally to tort claims of all types."   Their contention may be persuasive if, for example, Connecticut had enacted some narrowly tailored policy demonstrating its unmistakably strong interest in protecting    in-state    claimants    from    out-of-state manufacturers of defective products.   But Connecticut does not treat product liability claims differently than general tort claims: it has prescribed the same limitations period for both types of claims.   *Compare* Conn. Gen. Stat. § 52-577 (three-year statute of limitations for general torts claims), *with* Conn. Gen. Stat. § 52-577a (three-year statute of limitations for products liability claims).   In fact, the Connecticut Supreme Court has found that "the legislative history of the act [reveals] that the legislature was merely recasting an existing cause of action and was not creating a wholly new right for claimants harmed by a product." *King v. Volvo Excavators AB*, 215 A.3d 149, 157 (Conn. 2019) (alteration in original) (internal citation omitted); *see also Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769, 774 (Conn. 2003) (noting that Connecticut's "product liability act was

designed in part to codify the common law of product liability").

The Rusticos also fail to prove that they are members of the class of persons whom Connecticut's statute of limitations was designed to protect. "The basic purpose of a statute of limitations is to protect . . . against the prosecution of stale claims." Restatement (Second) of Conflict of Laws § 142 cmt. f (1988). Both California and Connecticut agree that statutes of limitations are designed to protect in-state defendants and courts by cutting off liability and preventing the litigation of stale claims. *See Ashland*, 181 Cal. Rptr. at 341 (noting that "[s]tatutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases"); *Baxter v. Sturm, Ruger & Co.*, 644 A.2d 1297, 1300 (Conn. 1994) ("Whether they take the form of statutes of limitation or of statutes of repose, time constraints on the initiation of product liability actions serve the important public policy of preventing the litigation of stale claims."). Attempting to use Connecticut's statute of limitations to extend liability, the Rusticos conflate *their preference* in applying Connecticut law with Connecticut's legitimate interest in doing so. But the policy underlying Connecticut's statute of limitations would not be advanced merely because a former Connecticut citizen would benefit from its application in a California court.

The Rusticos urge us to depart from our decision in *Nelson* by essentially conjecturing that California courts would overrule *Ashland* if given the opportunity. But our holding here is consistent with a more recent California state court decision, *McCann v. Foster Wheeler LLC*, 225 P.3d 516 (Cal. 2010). McCann, residing and working in Oklahoma, was exposed to asbestos while installing a boiler

manufactured by a New York corporation. *Id.* at 520–21. Nearly fifty years after such exposure, McCann was diagnosed with mesothelioma, prompting him to file suit in California, to which he had moved before the diagnosis. *Id.* at 521.

Under step one of the governmental interest test, the court determined that the two relevant laws differed. *Id.* at 527–29. Under California law, McCann's claims would have been timely because California's statute of repose— which typically barred stale claims—did not apply to his latent personal injury claims. *Id.* at 528–29. Under Oklahoma law, however, McCann's claims would have been untimely because Oklahoma's ten-year statute of repose did apply. *Id.* at 527–28.

Under step two, the court determined that California and Oklahoma each had a legitimate interest in seeing its own law applied. California, whose law *allowed* claims based on latent personal injuries as long as the claims were filed within one year of the first manifestation of symptoms, had a legitimate interest because the application of its law would have *extended* liability for its in-state plaintiff. *Id.* at 532. On the other hand, Oklahoma, whose law *cut off* liability after ten years "to balance the interest of injured persons in having a remedy available . . . against the interest of [manufacturers]," had a legitimate interest because the application of its law would have *limited* liability for the out-of-state defendant, "providing a measure of security for [manufacturers] whose liability could otherwise extend indefinitely." *Id.* at 529 (internal citation omitted).[3]

---

[3] The court then proceeded to step three of the governmental interest test, where it "carefully evaluate[d] and compare[d] the nature and

Here, unlike in *McCann* where the application of either state's law would have advanced its underlying purpose, the application of only one state's law would advance such a purpose. Both California and Connecticut's statutes of limitations are designed to protect in-state defendants and courts by *preventing* the litigation of stale claims and *limiting* in-state liability. But the Rusticos, now citizens of Florida, attempt to thwart this policy by *reviving* their stale claims and *extending* in-state liability. The application of only California's statute of limitations, which would bar the claims, advances the purpose of protecting California defendants and California courts. *See id.* at 534–37 (applying *shorter* statute of repose to *limit* liability); *Nelson*, 716 F.2d at 644 (holding that "[o]nly California has an interest in having its statute of limitations applied" because "the forum is in California, and the only defendant is a California resident").[4] Because California—but not Connecticut—has a legitimate interest, there is a "false conflict," leading us to apply the California law. Although the district court erred by failing to consider whether Connecticut had a legitimate interest in seeing its law

strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *McCann*, 225 P.3d at 533. The court ultimately applied Oklahoma law because "Oklahoma's interest (as embodied in its statute of repose) would be more impaired if its law were not applied under the circumstances of this case than would be California's interest if its statute of limitations is not applied." *Id.* at 537.

[4] It is of no consequence that Ms. Rustico's surgery occurred outside of California. *See, e.g.*, *Ashland*, 181 Cal. Rptr. at 341–42 (holding that "California is the only interested state" even though "Kentucky is the plaintiff's domicile, the place of contracting, and the place of payment" because "none of these contacts gives Kentucky an interest in having its statute of limitations applied").

applied, the district court correctly held that California's two-year statute of limitations governs the claims.[5]

## B. The Tolling Agreement does not render the Rusticos' claims timely

Under the Tolling Agreement, the Rusticos promised "to delay the filing of any lawsuit" but ultimately file any such lawsuit "in the Northern District of California only and only in the form of a single plaintiff family complaint." In exchange, Intuitive promised to "toll the *applicable statute of limitations* for a three month period" (emphasis added). The Tolling Agreement does not provide a choice-of-law

---

[5] Even if we were inclined to infer that Connecticut has *some* degree of interest in the application of its law here and we were to proceed to step three to compare the nature and strength of each state's interest in the application of its own law, it is clear that California has a much stronger interest that would be more impaired if its law were not applied. Although Ms. Rustico was harmed by the allegedly defective product in Connecticut, the Rusticos themselves assert that Intuitive "has a substantial business presence in California": Intuitive "directs its operations out of California"; Intuitive's "decision to use faulty insulation and other faulty components, accessories and instrumentation and the decision to not report information about the defective product were all made in California"; Intuitive's "failure to identify the dangers inherent in its product occurred in California"; and Intuitive's "promotional materials and advertisements all originate in California." For these reasons, the Rusticos fail to demonstrate that their case represents a "rare situation[] where the forum will entertain a claim that is barred by its own statute of limitations but not by that of some other state." Restatement (Second) of Conflict of Laws, § 142 cmt. f (1988); *see also, e.g.*, *Aalmuhammed*, 202 F.3d at 1237 (reversing and applying New York's longer statute of limitations—instead of California's shorter one—even though the suit was brought in California against a California defendant because "New York's connection with [plaintiff]'s claim [regarding a movie script] is considerably more substantial, immediate and concrete than California's" because the movie was filmed in New York).

provision identifying "the applicable statute of limitations," but it expressly preserved "any statute of limitations defense that could have been asserted before the date of the tolling period." In fact, the Tolling Agreement even clarified, "Upon the completion of the tolling period, Intuitive Surgical will have all defenses available to it as it had on the first day of the tolling period."

Although counsel executed the agreement on August 9, 2013, the Tolling Agreement did not commence until Intuitive was "provided with [Ms. Rustico]'s name." Counsel, however, waited nearly six months after executing the Tolling Agreement to submit Ms. Rustico's name. By the time counsel did so on February 3, 2014—a few weeks *after* the two-year anniversary of Ms. Rustico's surgery, which had occurred on January 12, 2012—the time period enacted in California's two-year statute of limitations had already expired. Because the Tolling Agreement expressly preserved Intuitive's statute-of-limitations defense for "the applicable" jurisdiction, Intuitive is entitled to employ its statute-of-limitations defense under California law.

The Rusticos characterize the Tolling Agreement as a clever "bait and switch" and "gotcha" trap, but they do not identify any words or phrases in the Tolling Agreement that lead to such conclusions. Although they argue that it was "impossible" to foresee that California's statute of limitations ultimately would apply, their own complaint references punitive damages under California law, undermining their claim of impropriety. The Rusticos were not *pro se* plaintiffs who mistakenly let their claims expire while attempting to navigate the proverbial minefield of product liability litigation. On the contrary, the Rusticos were "protected by an attorney, who is charged with knowledge of the law in California as far as the statute of

limitations is concerned." *Kunstman v. Mirizzi*, 44 Cal. Rptr. 707, 710 (Ct. App. 1965). The terms of the Tolling Agreement do not operate to rescue the Rusticos' untimely claims.

## C. Equitable estoppel does not apply to the Rusticos' claims

Equitable estoppel is a doctrine that can prevent a defendant's reliance on the applicable statute of limitations, and "comes into play only after the limitations period has run." *Lantzy v. Centex Homes*, 73 P.3d 517, 532 (Cal. 2003). A defendant may be equitably estopped "from asserting the statute of limitations as a defense to an admittedly untimely action" when "his conduct has induced another into forbearing suit within the applicable limitations period." *Id.* It serves as "a remedial judicial doctrine employed to [e]nsure fairness, prevent injustice, and do equity." *Spray, Gould & Bowers v. Associated Int'l. Ins. Co.*, 84 Cal. Rptr. 2d 552, 558 (Ct. App. 1999). Under California law, there are four elements:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

*Leasequip, Inc. v. Dapeer*, 126 Cal. Rptr. 2d 782, 789 (Ct. App. 2002).

The Rusticos argue that Ms. Rustico "refrained from instituting legal proceedings in Connecticut" because

Intuitive "lulled [her] into a false sense of security" with the Tolling Agreement, causing "her to forfeit an otherwise timely claim" in Connecticut.[6] But the Rusticos failed to submit any evidence that identifies a misrepresentation, material omission, or false promise made on behalf of Intuitive. *Cf. Vu v. Prudential Prop. & Cas. Ins. Co.*, 33 P.3d 487, 494 (Cal. 2001) (holding that defendant would be estopped from raising statute-of-limitations defense if plaintiff proved that he "reasonably relied" on defendant's misrepresentation). The record is devoid of any communication from Intuitive suggesting the applicability or viability of any jurisdiction's statute of limitations. The Rusticos may feel tricked that their claims are time-barred, but the Tolling Agreement explicitly informed them that Intuitive did not "waive or release any statute of limitations defense that could have been asserted before the date of the tolling period." *Cf. Ashou v. Liberty Mut. Fire Ins. Co.*, 41 Cal. Rptr. 3d 819, 832 (Ct. App. 2006) (holding that defendant did not "lull [plaintiff] into a false sense of security regarding the time bar of [the applicable statute of limitations]" because defendant's letter "*expressly stated* it would not waive defenses" (emphasis in original)). In fact, the Rusticos were represented by counsel, who presumably reviewed the Tolling Agreement before voluntarily opting into it by providing Intuitive with Ms. Rustico's name some weeks after the two-year anniversary of Ms. Rustico's surgery—despite waiting nearly six months after executing it. *Cf. Steinhart v. Cty. of L.A.*, 223 P.3d 57, 69 (Cal. 2010)

---

[6] The Rusticos assume—without offering any legal support or choice-of-law analysis—that if they had filed their claims in Connecticut, a Connecticut court would have applied Connecticut's longer statute of limitations. We do not reach this issue. We also note that, under the Tolling Agreement, the parties agreed that the sole venue would be the Northern District of California.

("In general, the law particularly disfavors estoppels where the party attempting to raise the estoppel is represented by an attorney at law." (internal citations omitted)).    We appreciate our holding's unfortunate consequences for the Rusticos, but the doctrine of equitable estoppel does not apply to their claims.

**AFFIRMED.**